SINDLINGER v. THE CITY OF KANSAS, *Appellant.*

Division Two, January 9, 1895.

1. **City**: STREETS: TRAVELER: NEGLIGENCE. A city is required to keep its streets and highways free from obstructions and reasonably safe for travel in the usual modes, and is liable for injuries to the traveler caused by its neglect to do so.

2. ——: ——: ——: CONTRIBUTORY NEGLIGENCE. The traveler must, however, exercise common and ordinary caution to avoid injury, notwithstanding the neglect of the city authorities.

3. **Contributory Negligence, Question for Court, When.** The question of plaintiff's negligence in a personal injury suit is one for the court where the evidence admits of no other inference than that plaintiff was negligent and that such negligence was the proximate cause of the injury.

4. **City**: BRIDGE: PERSONAL INJURY: CONTRIBUTORY NEGLIGENCE. Where plaintiff ran a foot race by moonlight across a bridge and threw himself violently against a guard rail, adjoining a stairway at one end of the structure, which he had long known to be there and could then see, and the railing broke precipitating him to the ground below, he can not recover for the resulting injuries.

*Appeal from Lafayette Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED.

*John S. Blackwell* and *F. P. Walsh* with *F. F. Rozzelle* for appellant.

(1) It was error to admit evidence of plaintiff's general conduct and habits as to sobriety. *Collins v. Glass,* 46 Mo. App. 297; *Suttie v. Aloe,* 39 Mo. App. 38. And the admission of such evidence constituted reversible error. *Suttie v. Aloe,* 39 Mo. App. 38;

*Clark v. Fairley*, 30 Mo. App. 340; *Deery v. Cray*, 5 Wall. 807; *Smith v. Shoemaker*, 17 Wall. 630; *Railroad v. O'Brien*, 119 U. S. 99; *Gilmer v. Higley*, 110 U. S. 47; Thompson on Charging Jury, sec. 130. (2) The court erred in permitting witnesses to give their opinions as to the safety of the railing. It was for the jury to determine, from the facts proven, whether it was or not in such condition. *Koons v. Railroad*, 65 Mo. 592; *Brown v. Road Co.*, 89 Mo. 152; *Eubank v. City of Edina*, 88 Mo. 650; *Garish v. Railroad*, 49 Mo. 274; *Wetherell v. Patterson*, 31 Mo. 458. (3) The court erred in allowing improper evidence as to the permanency of plaintiff's injuries. *Bailey v. Westcott*, 14 Daily, 506; *Atkins v. Railroad*, 64 Sup. Ct. Rep. N. Y. 102; *Curtis v. Company*, 18 N. Y. 542; *Lincoln v. Railroad*, 23 Wendell, 425; *Lozer v. Railroad*, 38 Hun, 100; *Dawson v. Troy*, 48 Hun, 322. (4) The court erred in permitting plaintiff's counsel to read to the jury the defendant's city charter, a public act. *Bowie v. Kansas City*, 51 Mo. 445; *Inhabitants v. Robinson*, 75 Mo. 192; 1 Thompson on Trials, secs. 1050, 1055, 1056. It is error to permit statutes to be read to the jury, leaving each juryman to place his own interpretation upon the law and its requirements. (5) The court erred in overruling defendant's motion to strike out and allowing evidence of the alleged negligence that defendant failed to maintain lamp lights on the night of the accident. The law does not impose the duty upon a municipal corporation to light its streets. *Freeport v. Isbell*, 83 Ill. 440; Jones on Neg. Mun. Corp., p. 165, sec. 85. (6) The court erred in giving plaintiff's instruction numbered 1. The instruction is erroneous because: *First.* It refers the jury to the pleadings. *McGinnis v. Railroad*, 21 Mo. App. 399; *Grant v. Railroad*, 25 Mo. App. 227. *Second.* It is predicated on negligence not alleged in the petition and is broader than the allegations of

the petition. *Jordan v. Hannibal*, 87 Mo. 674; *Gourley v. Railroad*, 93 Mo. 445. (7) Plaintiff's instructions numbered 1, 3 and 5 are erroneous because they are broader than the allegations of the petition. "Instructions in an action for negligence should confine the jury to the negligence alleged in the petition." *Dahlstrom v. Railroad*, 96 Mo. 99; *George v. Railroad*, 40 Mo. App. 433; *Ravenscroft v. Railroad*, 27 Mo. App. 617; *Gourley v. Railroad*, 93 Mo. 445. "When a petition alleges a specific act of negligence as the ground of plaintiff's action, there can be no recovery for any other act." *Price v. Railroad*, 72 Mo. 414. (8) The court erred in giving plaintiff's instruction numbered 6. This instruction was erroneous because: *First.* It does not properly declare the law. *O'Donnel v. Patton*, 117 Mo. 14. *Second.* It does not define or explain to the jury the meaning of "extraordinary care or caution." *Wiser v. Chesley*, 53 Mo. 547. "Instructions must be considered with reference to the possibilities of their interpretation." *State to use v. Bank*, 10 Mo. App. 482. (9) The court erred in giving plaintiff's instruction numbered 9. It is erroneous because: *First* It is an abstract proposition calculated to mislead the jury. *Gourley v. Railroad*, 93 Mo. 445; *Ravenscroft v. Railroad*, 27 Mo. App. 617. *Second.* It announces a rule that can have no application to a case like this: The question of remote negligence was not in this case. *Matthews v. Co.*, 59 Mo. 474; *Bonine v. Richmond*, 75 Mo. 437; *Kuhlman v. Meier*, 7 Mo. App. 261; *Hoffman v. Ackley*, 34 Mo. 277; *State ex rel. v. Emerson*, 74 Mo. 607. *Third.* The instruction does not correctly state the law of contributory negligence. "The question to be determined in every case is not whether the plaintiff's negligence caused, but whether it contributed to, the injury of which he complained." Shearman & Redfield on Neg., sec. 96, p. 152, and

cases there cited. *Ashbrook v. Railroad*, 18 Mo. App. 290. (10) Plaintiff's instruction numbered 7 should not have been given. It is based solely upon the question of negligent construction, of which there was no evidence. It is error to give instructions upon a theory of negligence which has no evidence to support it. *Chrisley v. Hughes*, 24 Mo. App. 275; *Sweeney v. Railroad*, 38 Mo. App. 154; *Bowen v. Railroad*, 75 Mo. 426; *Bergman v. Railroad*, 104 Mo. 90; *Norton v. Railroad*, 40 Mo. App. 447; *Gerren v. Railroad*, 60 Mo. 410; *Evans v. Railroad*, 106 Mo. 594; Thompson on Charging Jury, p. 175; *Dowling v. Allen*, 88 Mo. 293; *Edwards v. Myers*, 22 Mo. 481. (11) The plaintiff was not entitled to recover under any view of the evidence. The demurrer to the evidence should have been sustained. The evidence of plaintiff's own witnesses, as well as the undisputed testimony of defendant's witnesses, shows that plaintiff was guilty of such contributory negligence as ought to bar a recovery by him in this case. *Ashbrook v. Railroad*, 18 Mo. App. 290; *Moxey v. Railroad*, 113 Mo. 1; *Lynch v. Railroad*, 112 Mo. 420.

*E. C. Mapledoram, W. M. Payne* and *William Aull* for respondent.

(1) There was no error in the admission of evidence of witness Neff. *Corrister v. Railroad*, 25 Mo. App. 627; *Brennan v. St. Louis*, 92 Mo. 488; *Margrave v. Ausmus*, 51 Mo. 567; *Railroad v. Moore*, 37 Mo. 388; *Bank v. Armstrong*, 62 Mo. 59; *Clark v. Conway*, 23 Mo. 438; *Woodburn v. Cogdal*, 39 Mo. 222; *Schools v. Risley*, 40 Mo. 357; *Buckley v. Knapp*, 48 Mo. 152; *Loewer v. Sedalia*, 77 Mo. 437; *Strauss v. Railroad*, 86 Mo. 433; R. S. Mo. 1889, sec. 2303. (2) There was no error in the giving of opinions by the witness Whit-

worth, and in fact no opinion given. If it were error it was not such as materially affected the merits of the action and was both invited and insisted upon by appellants over respondent's objections. *Loewer v. Sedalia*, 77 Mo. 446; *Strauss v. Railroad*, 86 Mo. 433; *Stevens v. Crane*, 116 Mo. 408; *Thorpe v. Railroad*, 89 Mo. 650; *Holmes v. Braidwood*, 82 Mo. 610; *Davis v. Brown*, 67 Mo. 313; *McGonigle v. Daugherty*, 71 Mo. 259. (3) There was no error in the admission of testimony of physicians as to the permanence of injuries. *Filer v. Railroad*, 49 N. Y. 45; *Griswold v. Railroad*, 115 N. Y. 61; *Turner v. Newburgh*, 109 N. Y. 309; *Squires v. Chillicothe*, 89 Mo. 231. (4) There was no error in permitting parts of defendant's city charter to be read in evidence. *Bowie v. Kansas City*, 51 Mo. 456; *Inhabitants v. Robinson*, 75 Mo. 192. (5) There was no error in overruling defendant's motion to strike out parts of petition, and in allowing evidence that there were no lights in defendant's lamps on the viaduct on the night of the accident. *Loewer v. Sedalia*, 77 Mo. 432; *Hyatt v. Rondont*, 44 Barb. 386; *Com. v. Bridge Co.*, 12 Cush. 242; *Miller v. St. Paul*, 38 Minn. 134; 20 Am. and Eng. Corporation Cases, 349; *Walker v. Kansas City*, 99 Mo. 651; Buswell on Personal Injuries, p. 282, sec. 179; *Jefferson v. Chapman*, 127 Ill. 438; *Indianapolis v. Scott*, 72 Ind. 196; *Smith v. St. Joe*, 45 Mo. 450; *Joliet v. Verly*, 35 Ill. 60; *City v. Powers*, 42 Ill. 169; *Seward v. Milford*, 21 Wis. 491; *Daniels v. Lebanon* 58 N. H. 284; *Sleeper v. Sandown*, 52 N. H. 244. (6) There was no error in instruction number 1 given for plaintiff. *Corrister v. Railroad*, 25 Mo. App. 619; *Edelman v. Trans. Co.*, 3 Mo. App. 506; *State v. Scott*, 109 Mo. 231; *Porter v. Knight*, 63 Iowa, 365; *Bryan v. Railroad*, 63 Iowa, 454; *Ins. Co. v. Rothchild*, 82 Ill. 168; *Railroad v. Porter*, 92 Ill. 437; *Railroad v. Gaftka*, 27 Ill. App. 524; *Ladd v. Piggott*, 114 Ill. 654; *Railroad v. Hastings*,

136 Ill. 255; *Railroad v. Voelke*, 31 Ill. App. 319; *Hotel Ass'n v. Walters*, 23 Neb. 280; *Burdoin v. Trenton*, 116 Mo. 371. (7) Plaintiff's instructions 1, 3 and 5 were not erroneous. Especially not so when compared with other instructions given. *Karle v. Railroad*, 55 Mo. 476; *Whalen v. Railroad*, 60 Mo. 323; see, also, authorities cited under point 6, *supra; Jefferson v. Chapman*, 127 Ill. 438; *Springfield v. LeClaire*, 49 Ill. 476; *Chicago v. Johnson*, 53 Ill. 91; *Chicago v. Brophy*, 79 Ill. 277. (8) There was no error in instruction number 6 given for plaintiff. *Edelman v. Trans. Co.*, 3 Mo. App. 503; *Loewer. v. Sedalia*, 77 Mo. 438; *Johnson v. Railroad*, 96 Mo. 349; *Neuehlhausen v. Railroad*, 91 Mo. 332; *Demetz v. Benton*, 35 Mo. App. 559; *Otco v. Railroad*, 12 Mo. App. 168. (9) There was no error in giving instruction number 9 for plaintiff. *McGrew v. Railroad*, 109 Mo. 582; Thompson on Trials, sec. 2321; *Swigart v. Hawley*, 140 Ill. 192; *Meyer v. Railroad*, 19 Mo. 223; *Parham v. Railroad*, 56 Mo. 338. Especially so when read in connection with the other instructions, and especially instructions for defendant. (10) There was no error in giving instruction 7 for plaintiff. There was abundant evidence of negligent construction. The simple description given by the witness of the manner of construction stamps upon defendant the grossest and most reckless negligence imaginable.

GANTT, P. J.—This is an action for damages for personal injuries occasioned by a fall from the end of the Wyoming street viaduct in Kansas City. Plaintiff sued the city and recovered judgment in the circuit court, for $6,800, and, if plaintiff is entitled to recover at all, the verdict is not excessive.

The accident occurred on the twentieth day of July, 1891. At the time in question there was a bridge, or viaduct, beginning at the corner of Twelfth

and Wyoming streets and extending over the private property and railroad tracks of the Union Pacific and Missouri Pacific railroad companies to St. Louis avenue, on a line with what would be Wyoming street if that street were extended through the yards of the railway companies. The facts developed at the trial show that in the fall of 1888 a stairway and railing were constructed at each end of said bridge, or viaduct; that the railing and stairways were constructed by skilled and competent workmen; that the material used in their construction was such as is generally used in all similar bridge construction and was composed of sound material selected for the purpose; that the city, through its authorized officers, from the time of the construction of said railing and viaduct up to and including the very month in which this accident occurred, kept up a regular inspection of said viaduct and the railings and appurtenances thereto; that the viaduct, or bridge, and the railing at the north end were inspected on the third of July, 1891, seventeen days prior to the time of the happening of the accident, and were then found to be sound and in good condition. The evidence tending to show a defective condition of the railing prior to the time of the accident in question, was the statement of a witness, whose deposition was read to the jury, to the effect that, about three weeks prior to the accident, he had leaned against the railing and that it shook enough to warn him to get away, and that he did not think it was safe, but he made no other examination of it.

The evidence on the part of plaintiff to show a faulty construction of the railing at the point where the accident happened was that the railing was constructed in the following manner: Four feet of the viaduct, which was nineteen feet wide, was taken up with the entrance to the stairway, leaving the space

between the inside of the stairway and the railing on the opposite side of the viaduct fifteen feet wide. One side of the stairway was supported by the column that supported the viaduct. The other side of the stairway was supported by a post extending from the ground up to and against the viaduct a distance of three feet and a half above the floor of the viaduct. On the opposite side of the viaduct there was a column extending the same height above the floor of the viaduct. Half way between the post at the head of the stairway and the opposite side of the viaduct, there was another post, four by four inches in dimensions. The distance between the posts was, therefore, seven feet. The end posts did not give way, and there is, therefore, no question as to their being securely fastened. The center post was toe-nailed with twenty-penny nails to the floor of the viaduct and braced by a block sawed out to fit around the post and spiked to the floor of the viaduct. On top of these posts rested a railing two by six inches, spiked to all three of the posts. On the inside of the posts and immediately below and adjoining the top railing was another railing two by six inches, spiked to the inside of all three of the posts. The top railings were also spiked to the under railing and both railings were joined at the center post and mitered together on the top and sides of the posts. All the competent testimony in the case shows that the railing in question was originally properly and securely constructed, and was safe for persons using the viaduct in the ordinary modes of travel.

Mr. Drake, a witness for plaintiff, who was at the scene of the accident, testified that he examined the tops of the posts next morning and they were checked and decayed. Helm, who was with Drake, says you could not call the flecks in the posts rot, but it would not be as strong as new timber. This was all that

tended to show negligence in maintaining the railing after it was built.

The evidence shows that on the night in question the plaintiff, with a companion, went upon this viaduct, which was about eighteen feet above the ground, and about eight hundred and fifty feet in length, and was only used by foot passengers; that it had been drizzling rain, and was somewhat cloudy, but that there was a full moon, which shone at intervals through the breaking clouds. The testimony of a number of witnesses, which was only contradicted by the plaintiff himself, was to the effect that the plaintiff, with a number of other young men, was drinking beer from a bucket in the rear of the saloon in the immediate vicinity of the viaduct shortly before the accident occurred, and that plaintiff was more or less under the influence of liquor at the time of the happening of the accident.

The testimony of plaintiff's companion, James Baine, who was introduced at the trial as a witness in his behalf, corroborated by all the other eyewitnesses of the accident, shows very clearly that the plaintiff, when some distance away and approaching the stairway at the north end of the viaduct, challenged his companion to a foot race in the dark, and while engaged in such foot race propelled himself with such violence and force against the railing at the north end of the viaduct as to break the railing with a crash that was heard, according to plaintiff's own witnesses, some distance away, and precipitated himself to the ground below.

Plaintiff in his own testimony does not enlighten us as to what caused the breaking of the railing. Although he states on direct examination that he was walking at the time, he does not state whether he struck the railing or not, but he explains this by saying

that it was so near to the time of the happening of the accident that he did not remember, and when asked the specific question as to how he got hurt, answered that he could not remember, and did not, in fact, remember any occurrence whatever after his challenge to his companion to run.

The plaintiff lived a couple of blocks from the south end of the viaduct in question, and was familiar with the viaduct and its construction.

There are a number of errors insisted upon by the defendant, but the view we take of this case renders it unnecessary to discuss or decide them. The uncontroverted evidence on the part of the plaintiff is that plaintiff bantered his companion, James Baine, to run a race on the viaduct in question on the night of July 20, 1891; that plaintiff, a grown up man, being in front of Baine, began to run; that they were then at least two spans of the viaduct from the end of the viaduct and that plaintiff ran the whole of this distance, ran against the railing, broke it and was precipitated to the ground; that the crash of the breaking was heard at least a block away. In addition to this, plaintiff's own testimony tends very strongly to show he was looking back over his shoulder when he ran into and broke the railing.

The law of negligence as applied to municipal corporations is well settled. They are bound to keep their streets and highways free from obstructions and reasonably safe for travel in the usual modes, and are liable for injuries caused by neglect to do so. *Russell v. Columbia*, 74 Mo. 480; *Loewer v. Sedalia*, 77 Mo. 431; *Franke v. St. Louis*, 110 Mo. 516. But while this is true there is nothing in the law that exonerates a traveler on such streets from exercising common and ordinary caution to avoid injuring himself, notwithstanding the neglect of the city authorities.

Perhaps the earliest reported case on contributory negligence, in the English law, is *Butterfield v. Forrester*, 11 East, 60. That was an action for damages for obstructing a highway, whereby plaintiff was thrown from his horse and injured. The defendant, for the purpose of making repairs to his house, which was close by the roadside, had put up a pole partly across the street on his side, leaving, however, free passage through the street along the other side of the way, and plaintiff, riding rapidly through the street just at night fall, but before it was dark, not observing the obstruction, rode violently against it, and, being thrown from his horse, was seriously injured. It was held he could not recover, Lord ELLENBOROUGH saying: "A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right."

"This is the general rule of law as to contributory negligence, which applies, as of course, to actions brought by travelers for injuries received by reason of defects or obstructions upon the highway." Beach on Contributory Negligence [2 Ed.], sec. 246.

Ordinarily the question whether plaintiff, under all the circumstances, has been guilty of contributory negligence is one for the jury. *Loewer v. Sedalia*, 77 Mo. 431. But if the evidence elicited to establish the contributory negligence of plaintiff admits of no other fair inference than that he was negligent and that his own negligence contributed directly to, or was, in other words, the proximate cause of, the injury, then it becomes one for the court and a demurrer to the evidence will be sustained.

That ordinary care required of the city to place a guard rail at the end of this viaduct, is not debatable; that it is the duty of a city to keep its streets reason-

ably safe for travel by night as well as by day, must also be conceded. But in this case, the plaintiff lived in the immediate vicinity of the end of this viaduct from which he fell, and had lived there for seven years. He had frequently walked over it, though he says when he worked at the packing house he always took the James street viaduct because it was better in that, "there aint no stairs going up and stairs going down; and the steps are rotten and decayed up there (refer-ring to the viaduct in question) *and I knew that."* He knew of the abrupt ending of the viaduct, and knew there was a railing there and could see it that night.

Knowing the situation then as he did, can there be two opinions as to his conduct in running a race in the dark over that viaduct that night; and can there be any doubt that his reckless carelessness. in throwing himself while so running against this guard rail, contributed directly, and was in fact the proximate, if not the sole, cause of his injury? The railing was put there as a warning of the danger and to prevent those who should use the viaduct in an ordinarily careful manner from being hurt. It will be remembered that the way was constructed solely for pedestrians. It was not to be supposed that grown up men would expect to propel themselves against it in running races, and of course was not constructed with such a view. But that it was entirely sufficient for the purpose for which it was erected we think clearly appears, not only from the plaintiff's evidence, but was abundantly established by that of defendant. Those only who are using a high-way or street in an ordinarily careful way have a right to complain of defects therein. Many well considered cases hold that persons who use the street to run races, or for games, can not recover for defects therein. *McCarthy v. Portland,* 67 Me. 167; *Harper v. Milwaukee,* 30 Wis. 371; *Blodgett v. Boston,* 8 Allen, 237.

In *Stickney v. City of Salem*, 3 Allen, 374, the supreme court of Massachusetts, in an opinion by Chief Justice BIGELOW, held that the city was not liable in damages to one who, while stopping in a highway for the purposes of conversation, leaned against a defective railing and was injured.   He said:   "The legal obligation of keeping a sufficient railing upon a highway is imposed only when it is necessary to mark the limits of that part of the road within which persons may safely travel, or to furnish a guard against dangerous places, so that proper protection may be afforded to those who, in the exercise of due care as travelers, while passing or standing on the way, might otherwise be exposed to accident or injury," and a demurrer to the evidence was sustained.

We have not overlooked plaintiff's statement that he was walking, but we have considered it with his other statement that he had bantered Baine for a race *and that really he remembered nothing after that.*   But he is bound by the evidence of his witness Baine, who says, in answer to plaintiff's counsel, that plaintiff was running when he encountered the railing and was precipitated to the ground, and that he could see the plaintiff and that it was a moonlight night.   But if it was dark so much more reckless was plaintiff's conduct, knowing, as he did, the condition of the viaduct and swearing, as he does, that he did not know how close he was to the end.   Under such circumstances the inference can be but one way and that is that he was negligent in carelessly running against the guard rail and that his own conduct was the proximate cause of his present unfortunate condition and the city can not be made to respond therefor.

Much reliance is seemingly placed upon *Loewer v. Sedalia, supra*, but it is plain the two cases are very unlike.   In that case the city had negligently failed to

put a railing on the edge of the walk over the creek, and the plaintiff was carefully trying between the flashes of lightning to grope his way across the bridge on his way home. He did not, as this plaintiff, disregard all the laws of prudence by running a foot race in the dark across the bridge.

Nor does the fact that there were no artificial lights on the viaduct aid plaintiff under the evidence in this case. It was a moonlight night and there was sufficient light, according to Baine's testimony, for any pedestrian who was using the viaduct in a reasonably cautious way to see the guard rails. Plaintiff was hurt because he heedlessly ran headlong to the edge of a precipice, of which he was fully cognizant, and broke down the very precaution placed there for his protection. When entirely new it would hardly have withstood such an assault, not having been erected for such a purpose. For such recklessness the law affords no remedy. The judgment is reversed. All of this division concur.