# KAISER v. CITY OF ST. LOUIS, Appellant.

### Division One, December 22, 1904.

1. **STREET: Dangerous Cross-Grade.** A cross-grade of four hundredths of a foot in a street (which is less than six inches in ten feet), is not such a dangerous condition that a wagon cannot safely be driven along it, even though the street is in the midst of a great city and extensively traveled.

2. ———: ———: **Passing Wagons: Street Car.** Along the center of an extensively traveled street was a double-track street railway, and between it and the gutter the space was 12.5 feet. The first ten feet had a cross-grade or incline of six inches, and the rest twenty-four hundredths to the foot, and plaintiff undertook to drive his milk wagon, four feet and ten inches wide and low-hung, past another wagon moving "side by side" of a street car in the opposite direction, and in doing so his wagon turned over and he was injured. *Held,* that the cross-grade, at no place, was a dangerous condition, and the plaintiff having bottomed his case entirely upon the charge that the cross-grade was a dangerous condition and that a wagon could not be safely driven along it, he cannot recover.

3. ———: ———: ———: **Negligence of Driver.** If plaintiff's injuries were due to a failure on his part to exercise ordinary care in driving his milk wagon along a street he cannot recover damages from the city.

4. ———: ———: ———: **Duty of City.** The law requires cities to exercise such care in respect to the safety of its streets as persons of ordinary prudence would have used under the same or similar circumstances, and no more.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

REVERSED.

· *Charles W. Bates* and *Benjamin H. Charles* for appellant.

(1) There was a failure of proof. (a) The cause of action pleaded by the plaintiff was not sustained by his evidence, nor by any evidence in the case. He pleaded a ridge of macadam running lengthwise of the street and just north of the car tracks as being the cause of a dangerous and steep incline toward and into the gutter. Of the two witnesses who saw the accident and testified as to what occasioned it, one said that the outer hind wheel ran over a pile of mud not so big as a bucket at the same time that the inner front wheel was approaching the gutter; the other, that the wagon struck a crossing and a little hole just beyond it. These facts were not pleaded. (b) The defendant can not be held liable on a cause of action not pleaded. Hesselbach v. St. Louis, 179 Mo. 505; Fuchs v. St. Louis, 167 Mo. 620; Atchison v. Railroad, 80 Mo. 213; Raming v. Railroad, 157 Mo. 506; Gurley v. Railroad, 93 Mo. 445; Haynes v. Trenton, 108 Mo. 132; Waldhier v. Railroad, 71 Mo. 514; R. S. 1899, sec. 798. (c) There was no evidence connecting the defendant, by notice either actual or constructive, with the real cause of the accident as established by the evidence. (2) The actual fall or slant of the street

was not dangerous and was necessary for proper drainage. Assuming plaintiff's pleaded case to have been sustained by the evidence, nevertheless the accident was one of a class so rare and unexpected that defendant could not be charged with negligence for failure to guard against it. Hubbell v. Yonkers, 104 N. Y. 439. (3) Plaintiff's own evidence showed that the accident was directly due to his contributory negligence. Roberts v. Tel. Co., 166 Mo. 384; Hudson v. Railroad, 101 Mo. 13; Hagan v. Railroad, 150 Mo. 55. (a) It was broad daylight. Wheat v. St. Louis, 179 Mo. 572, 64 L. R. A. 292; Cohn v. Kansas City, 108 Mo. 387. (b) The ground was slippery, and called for extra caution, which plaintiff's evidence failed to establish. (c) The evidence is that plaintiff did not "notice." Cloney v. Kalamazoo, 124 Mich. 655; Dale v. Webster, 76 Iowa 370; Tel. Co. v. Jones, 59 Neb. 510. (d) Plaintiff had driven over this very ground every day for at least two weeks; and he will not be heard to say that he had not known of, or could not at the time have seen, a high and dangerous ridge in the middle of the street and running lengthwise of it (assuming, for the sake of the argument, that this was the cause of the accident). Wheat v. St. Louis, supra; Hutchins v. Prescott, 61 Mich. 252.

*Henry H. Oberschelp* for respondent.

(1) It is not necessary for recovery that the alleged negligence of the city should be the sole and exclusive cause of the injury. Voglesang v. St. Louis, 139 Mo. 127; Brennan v. St. Louis, 92 Mo. 482. (2) Plaintiff was not guilty of contributory negligence. In fact he was exercising ordinary care. Kossman v. St. Louis, 153 Mo. 293; Carrington v. St. Louis, 89 Mo. 208. (3) The more a street is used, the greater is the diligence required of the city to keep it reasonably safe for travel and the greater the right for the traveler to

presume that the street is safe. Young v. Webb City, 150 Mo. 342. (4) The appellate court will defer to the opinion of the trial court and will not interfere with its discretion. Gidionsen v. Railroad, 129 Mo. 403; Wendler v. People's H. F. Co., 165 Mo. 527; Finkelnburg's Mo. App. Prac., p. 109. (5) The verdict was for the right party and the judgment should be affirmed. Sullivan v. Railroad, 133 Mo. 8; Riley v. Railroad, 68 Mo. App. 665.

MARSHALL, J.—This is an action for damages for personal injuries sustained by the plaintiff, on February 23, 1900, at about eleven o'clock, a. m., caused by the turning over of a milk-wagon that he was driving along the north side of Chouteau avenue, in front of No. 2775 Chouteau avenue. The plaintiff recovered a judgment for two thousand dollars, and the defendant appealed.

The negligence charged in the petition is, that the city "raised or caused to be raised the middle portion of said Chouteau avenue at said place, so that said middle portion was much higher than said portion in and along the said gutter at said place, and defendant by its proper officers and agents long prior to said February 23, 1900, until and for sometime after said date, permitted and allowed to remain a steep decline in said street at said place beginning near the said middle portion and running toward and into said gutter, and said deep depression and said deep decline were dangerous to vehicles passing along said open road," and that the city was negligent in not remedying the said condition after it knew or by the exercise of ordinary care could have known thereof. The answer is a general denial and a plea of contributory negligence.

The facts in judgment are these:

Chouteau avenue runs east and west, is a very broad street, and has a double street car track in the

center thereof.  It is one of the most extensively trav-
eled streets in that part of the city.  For many years
it has been an improved, macadamized street, with
stone gutters on the sides.  At the place of the acci-
dent the land slopes sharply from both north and south,
towards the street.  In consequence thereof when it
rains the water naturally flows toward that part where
the accident occurred.  To carry off the surface waters
rapidly and to prevent their running into the cellars
of the houses abutting the street, there are gutters,
two feet wide.  From the north rail of the north car
track to the outer edge of the gutter, it is twelve and
one-half feet.  Beginning at the said north rail of the
north car track, the street declines toward the gutter
twenty-five one-hundredths of a foot in the first five
feet, fifteen one-hundredths of a foot in the next five
feet.  At a point ten feet north of the car track the
street declines one foot and forty-three one-hundredths
in four and one-half feet, the lowest point being the
bottom of the gutter; and from the bottom to the top
of the gutter there is an incline of one foot and thirty-
seven one-hundredths in one foot, thus forming the
curbstone.  At a point thirty-seven feet west of the
place of accident there is a sewer inlet, and at that
point the decline from the car track to the bottom of
the gutter is more gradual and not even as much or
as sharp at the gutter as it is at the place of the acci-
dent.  The construction of the street and the gutter
is substantially the same as on other streets of like
character.

The plaintiff had been a driver of various kinds
of delivery wagons in the city for nearly twenty years
before the accident.  For a period, ranging from ten
days to three or four weeks, according to the testi-
mony of the various witnesses, immediately preceding
the accident, he had been driving a milk wagon for
the Union Dairy Company, and had driven the wagon
every day over the street at and near the place of the

accident, delivering milk, particularly at No. 2771 Chou-
teau avenue, which was a few feet east of the place
of accident. Usually he drove from the east to the
west, on the north side of the street, but on the day
of the accident he reversed his course and about eleven
o'clock a. m., was driving from the west towards the
east on the north side of the street. When about one
hundred feet west of the place of the accident, he met
a street car and a wagon coming west ''side by side.''
The wagon was on the north side of the street and
between the car and the gutter. There was, as stated,
a space of twelve and a half feet between the car and
the outer edge of the gutter. The plaintiff's wagon
was four feet and ten inches wide. The width of the
other wagon is not stated. The plaintiff pulled his
horse toward the north and near the gutter so as to
pass the other wagon. The night before there had been
a freeze, but that morning it had melted and had left
the street slippery and muddy. There was a pile of
earth in the street, near the place of the accident, about
the size of a bucket. Just as the plaintiff's wagon was
passing the other wagon and the car, his wagon, ac-
cording to some of the witnesses, began to slip towards
the gutter, but according to the other witnesses the
right hind wheel of the plaintiff's wagon ran over the
said pile of earth, and that caused the left wheels of
the wagon ''to jump into the gutter,'' the wagon turned
over, and the plaintiff was injured. According to some
of the witnesses the plaintiff's wagon went from ten
to fifty feet after it began to slip and before the left
wheels went into the gutter. The plaintiff says he did
not see the pile of earth aforesaid, and the eyewitnesses
say he did not seem to notice it. The wagon that plain-
tiff was driving was swung low, with openings on each
side, like the ordinary milk wagon, and was not heavily
loaded at the time. It does not appear at what rate
of speed either of the wagons or the street car were
going at the time. At the close of the plaintiff's case,

and again at the close of the whole case, the defendant demurred to the evidence, the court overruled the demurrers, and the defendant excepted. The trial resulted in a verdict for the plaintiff, and the defendant appealed.

## I.

The first and principal error assigned here, is the action of the trial court in overruling the demurrers to the evidence, and it is insisted that the facts in judgment do not warrant a judgment against the city.

The plaintiff's case is bottomed entirely upon the charge that the cross-grade of the street was a dangerous condition and that a wagon could not be safely driven along it, and hence the city was negligent in not remedying it.

For the ten feet immediately north of the car track, the cross-grade was only forty one-hundredths of one foot. This is less than six inches in ten feet. There can be no question in the minds of reasonable men that such a grade is not dangerous. The plaintiff's wagon was four feet and ten inches wide. The width of the other wagon is not given, but deducting the width of the plaintiff's wagon, four feet and ten inches, from the ten feet aforesaid, leaves a space of five feet and two inches for the other wagon to pass in. And if the other wagon was the same width as the plaintiff's wagon, it follows that they could have passed each other safely, and there would have been four inches space to spare in the ten-foot space aforesaid.

But in addition to the ten feet aforesaid there were also two feet and six inches more space before the outer edge of the gutter would be reached. The cross-grade of this additional space was about eighty one-hundredths of one foot, or about twenty-four one-hundredths to the foot. It can not successfully be contended that this was a dangerous grade, or condition. Assuming that the left wheels of the plaintiff's

wagon would have to run on this two and a half foot space, which had a cross-grade of twenty-four one-hundredths of an inch to the foot, and that the right wheels of the plaintiff's wagon would pass over the portion of the ten foot space aforesaid, which had a cross-grade of forty one-hundredths of one foot in the ten feet, this would not be a dangerous condition, nor one that common prudence should expect would result in any injury to any one.

There was, therefore, ample space for the plaintiff's wagon and the other wagon to have safely passed each other, without the left wheels of the plaintiff's wagon going into the gutter at all.

But assume that it was necessary for the left wheels of the plaintiff's wagon to go into the gutter so as to give room to pass the other wagon, and the condition then would be that the left wheels of the plaintiff's wagon would be one foot and fifty-eight one-hundredths of a foot lower than the right wheels of the plaintiff's wagon. Even this would not be a dangerous place to drive in if the driver exercised any degree of care at all commensurate with the risk. Of course, if he drove rapidly into and along such a place, the momentum toward the left given the wagon from driving the left wheels suddenly and rapidly into the gutter would likely cause the wagon to turn over. The plaintiff's wagon, however, was low swung, and the weight was therefore near the ground, and this would make it harder to turn it over.

Something else than the character of the cross-grade must, therefore, have caused the wagon to turn over. Some of the witnesses say the wheels slipped towards the gutter, and that they continued to slip during the time that the plaintiff drove from ten to fifty feet before the wagon turned over. If this was the case, the plaintiff himself was negligent in not stopping before the wheels had slipped all the way into the gutter. Other witnesses say there was a pile

of dirt about as big as a bucket in the street, and that the plaintiff drove so that the right hind wheel of the wagon ran over the pile, and that this caused the left wheels of the wagon "to jump into the gutter." The evidence does not disclose how long a time the pile of earth had been there, nor does it show that the city knew it was there or that it was there for a long enough time before the accident to charge the city with implied notice. The city, therefore, can not be charged with negligence in respect to the pile of earth. Moreover, the plaintiff had driven along that particular part of the street every day for at least ten days, and he therefore knew or could have known by the exercise of ordinary care, that the pile of earth was there, and as it was no larger than a bucket, he could have easily avoided it, if he had used his senses and the degree of care that is required of one who drives a wagon on a public highway. [Wheat v. St. Louis, 179 Mo. 572.]

Viewed in every possible light and from every conceivable standpoint, there is, therefore, no negligence on the part of the city shown in the case. It is the duty of the city to keep its streets in a reasonably safe condition for persons, exercising ordinary care, to travel over them. But human foresight has never yet been able to prevent accidents, and all that the law requires of a city is that it shall exercise such care in respect to the safety of its streets as persons of ordinary prudence would have used under the same or similar circumstances. It nowhere appears from this record that the city has, in any wise, failed in its duty in this case. The trial court should have sustained the demurrers to the evidence. The verdict is without any foundation in fact sufficient to create a liability on the part of the city, and as no good can come of sending the case back for another trial, the judgment is reversed without remanding the cause.

All concur, except *Robinson, J.,* absent.