OSCAR M. BROWNING, Respondent, v. CITY OF AURORA, Appellant.

Springfield Court of Appeals, June 17, 1915.

1. **MUNICIPAL CORPORATIONS: Sidewalks: Defects In: Knowledge of.** Knowledge of a defect in a sidewalk does not alone preclude a recovery for injury caused thereby.

2. ———: ———: ———: Contributory Negligence: Jury Question. Action for personal injuries occasioned by a defective sidewalk. Under the evidence *held*, that whether or not plaintiff was guilty of contributory negligence was a question for the jury.

3. ———: ———: ———: Usage by Public: Liability of City. Action for personal injuries occasioned by defective sidewalk. Defendant city had constructed and maintained a wooden culvert as a part of the roadway of the street. It could not gainsay the right of the public to use same as a footway nor escape the liability for its neglect to keep same in a reasonably safe condition.

4. ———: ———: ———: Degree of Care Required of City. The city is not required to exercise the same degree of care, however, in maintaining such footway as would be exacted in a populous part of the city, but such a way must be kept reasonably safe.

5. APPEAL AND ERROR: Evidence: Objection to: Sufficiency. Action against a city for personal injuries occasioned by defective sidewalk. Attorney for plaintiff asked a witness what he knew about repairs on the walk having been made since the injury and defendant's attorney merely stated: "Object to that," and the objection was overruled and defendant excepted. Such character of objection preserved nothing for review.

Appeal from Greene County Circuit Court.—*Hon. Arch A. Johnson,* Judge.

AFFIRMED.

*I. V. McPherson* and *James A. Potter* for respondent.

*H. H. Bloss* and *George Pepperdine* for appellant.

ROBERTSON, P. J.—As a result of a jury trial the plaintiff obtained a judgment for $3000 against defendant on account of injuries received by stepping in a hole of a culvert in defendant city and it has appealed.

Intersecting Morgan street at an alley between Lee and Delta streets, at the time of the accident, was a ditch over which was a concrete culvert. Morgan

street, or avenue, ran north and south and was graded and graveled. The cut for the grading extended to the curb line of the street. The sidewalk portion of the street had never been improved further than to place thereon a few gravel in places. Across this ditch, about three feet deep, in the sidewalk line, some planks were placed lengthwise making what is referred in the testimony and in this opinion as the "foot bridge" eight or ten feet long and three or four feet wide, six or eight inches below the general level of the walk portion of the street, sagging in the middle and having no baluster. Just southwest of the concrete culvert and across the gutter at the curb line on the west side of the graded portion of Morgan street a plank culvert was constructed and maintained by the city practically on a level with the sidewalk. The culvert was twelve or fourteen feet long and four or five feet wide, and used as a wagon way. The plaintiff in walking hurriedly over this culvert after dark on the evening of January 1, 1914, stepped into a hole therein about six inches in width and about eighteen inches in length and received injuries upon which his judgment is based. Just when this culvert was placed there is not disclosed, but one witness, an ex-street commissioner testified that when he held that office in 1909 he, for the city, repaired it, and put the footbridge in. The man who was street commissioner in the Spring of 1912 testified that he then patched this culvert for the city. Another witness testified that this footbridge was there only a few years before the accident, and many of the witnesses testified that the path connecting the footwalk on the west side of Morgan street, south of this alley, with this wooden culvert was there long before the footbridge was constructed and the inference is justifiable that the public considered the footbridge more unsafe and unsatisfactory for foot travel than the roadway of the street, especially at night, and had been, since 1909, at least, using it in preference to the footbridge. Wit-

nesses testified as to the hole in this culvert, one saying it had been there two or three years, that it had been repaired but the repair had given way six months before the accident, and upon this latter point he was corroborated by other witnesses.

Under points and authorities in appellant's brief we have the following questions submitted for decision: I, II, IV and V, contributory negligence sufficient to defeat plaintiff's right to have his case submitted to a jury; III, that where a path is worn along a part of a street that is not designed for public travel the city, by reason of the use thereof, does not invite the public to use it and, therefore, it is not liable in this case for a hole in a culvert into which plaintiff stepped; and VI, the trial court erred in admitting testimony of repairs of the footbridge after the accident.

I, II, IV and V.   It is said the contributory negligence of plaintiff sufficient to take his case from the jury consisted in his reckless passage over the culvert, in the dark, when he knew the hole was there and that there was a safer way to have reached the roadway of Morgan street than over the culvert.   The plaintiff testified that he saw this hole in the culvert two or three months before his injury, but assumed that it had been repaired.   Knowledge of the defect in a walk does not alone preclude a recovery for an injury caused thereby.   [Devlin v. City of St. Louis, 252 Mo. 203, 207, 158 S. W. 346; Lueking v. City of Sedalia, 180 Mo. App. 203, 167 S. W. 1152, and Border v. City of Sedalia, 161 Mo. App. 633, 638, 144 S. W. 161.]   Under the facts of the case at bar it was for the jury to say whether the plaintiff was guilty of contributory negligence in the manner in which he passed over this culvert or whether he should have gone some other route.

III.   This point is the principal one involved and the contention of the defendant thereunder must be

held to be without merit. There was ample, if not conclusive proof, on the maintenance of this wooden culvert by the defendant as part of the roadway of Morgan street and under the facts of this case the city cannot gainsay the right of the public to use it as a footway nor escape liability for its neglect to keep it in a reasonably safe condition. Connor v. City of Nevada, 188 Mo. 148, 157, et seq., 86 S. W. 256, a case in principle involving facts almost identical with the facts here disclosed, in so far, at least, as the duty is imposed on the city with reference to pedestrians in the wagon way of a street. That case is cited with approval in Benton v. City of St. Louis, 217 Mo. 687, 701, 118 S. W. 418. See also Curran v. City of St. Joseph, 175 S. W. 584 (Mo.).

In the case at bar the defendant city had for years maintained this culvert with knowledge of its use by the public as a footbridge and it ought to be required to respond for the consequences of its negligence in maintaining it. To hold that it should not would be to in effect announce the rule that pedestrians should either use the dangerous footbridge or abandon the use of Morgan street, things the city cannot exact. The same degree of care is not required of the city in maintaining this footway as would be exacted in the populous part of the city as to its regularly constructed sidewalks, but such ways, as here involved, must be kept reasonably safe. [Warren v. City of Independence, 153 Mo. 593, 599, 55 S. W. 227.]

The defendant cites Holding v. City of St. Joseph, 92 Mo. App. 143, as sustaining the point here made but there (p. 142) it is stated that no showing was made as to why the plaintiff left a path along the sidewalk portion of the street at a place where no provision was made for a digression therefrom. The plaintiff was also following a cross-lot path which the city had not adopted as a walk.

190MA31

II. After testimony had been admitted without objection as to repairs of this footbridge subsequent to plaintiff's injury, and after defendant on cross-examination of one of plaintiff's witnesses had brought this fact out, one of plaintiff's witnesses was asked on direct examination what, if anything, he knew about the defendant having made repairs on the footbridge after plaintiff was injured. Defendant's attorney stated: "Object to that." The objection was overruled and defendant excepted. This character of an objection preserves nothing for review. [State v. Wilson, 223 Mo. 156, 170, 122 S. W. 701; State ex rel. West v. Diemer, 255 Mo. 336, 346, 164 S. W. 517.]

The record disclosing no errors and the jury having passed on the facts adversely to defendant the judgment must be and is affirmed.

*Sturgis, J.,* concurs; *Farrington, J.,* in a separate opinion.

## CONCURRING OPINION.

FARRINGTON, J.—For reasons unnecessary to state herein I have worked out this case along the lines on which to my mind the case should be decided and prefer to file my opinion which states the grounds on which I think the judgment should be affirmed.

The plaintiff, a minor, recovered through his next friend a judgment for three thousand dollars against the defendant, a city of the fourth class, as damages for personal injuries sustained. He stepped in a hole in a culvert which had been constructed by the defendant city in one of its streets, receiving severe injuries. There is no contention that the verdict was excessive.

The charge of negligence is that the city failed in its duty to keep the culvert in its thoroughfare in reasonably safe condition for travel, and that it knew of the defect in the culvert or by the exercise of ordinary care could have known of and repaired the same.

The answer is a general denial coupled with a plea that if there was a defect in the culvert the plaintiff knew thereof and with such knowledge walked into it without regard for his own safety; also, that the culvert on which plaintiff was injured was not designed for foot travel and that defendant had no knowledge of it being used for such purpose, and that there was a part of the street designed for foot travel which plaintiff could have used and avoided the dangerous way.

The issues raised are, first, Was the city negligent? and, second, that granted, Was the plaintiff negligent?

The injury occurred on Morgan street, a street running north and south at a point about midway between two streets running east and west and intersecting Market street. At this midway point, leading west off Morgan street is an alley. There was a walkway along the west side of Morgan street at the place where a sidewalk would be and some gravel or chats had been spread on the same by the defendant. This walkway extended up to and beyond the alley intersection. Over this alley intersection, joining the walkway on either side, the city had constructed a bridge or culvert which we will call the sidewalk culvert. It was for pedestrians to use in traveling along the west side of Morgan street when going north or south. The city had graded Morgan street and left a ditch parallel with the walkway along the street on the west side to carry off water and it was several feet in depth. The water came down Morgan street from the north and from the south to the alley referred to and then flowed west down the alley. The sidewalk culvert spanned the waterway leading west down this alley. The city had also constructed a concrete culvert across Morgan street near this place. Street lamps were maintained on this street but none lighted the street so as to make the hole in the culvert on which the injury occurred visible at night. In order that travelers might go from

Morgan street and turn west down the alley, the city had constructed and for a long time maintained a bridge or culvert over the ditch described which ran between the portion of the street designed for vehicles and the walkway used by pedestrians. This culvert, therefore, was several feet east of the line of the walkway or sidewalk culvert, but on about the same level. It was on this ditch bridge or culvert that plaintiff was injured. There was a hole in one of the planks about four inches in width and some eighteen inches in length, into which plaintiff stepped. He was found lying on the bridge in an unconscious state, after dark, being discovered by a pedestrian who was crossing the same bridge stepping on him.

The plaintiff had walked north on the west side of Morgan street until he reached the alley and then turned east across the ditch bridge to proceed on north in the street. Some little time before, that same evening, and while it was yet light he had gone south along the west side of Morgan street but had not passed over the bridge or culvert on which he was afterwards injured.

That a great many of the residents in that part of the city in walking north along Morgan street turned east at this alley just as plaintiff did, crossing the ditch bridge and going into the street there, is shown by the evidence, and also in coming south along Morgan street pedestrians would come down the street from the north and cross over the ditch bridge and from there continue along the walkway. This use to which pedestrians put the street who went to and from the business part of the city (which was south of the place of the injury) had been carried on for a long time and a well-beaten pathway had been marked out by user as a way that pedestrians went over this ditch bridge that had the hole in it.

As to the foregoing there is little or no dispute.

Although there is a conflict in the evidence, the following facts may be stated as being supported by evidence offered by the plaintiff. It is substantial, and there is nothing in the record of the trial showing bias or prejudice on the part of the jury (certainly not in the size of the verdict which is small enough under the disclosures made as to the severity of the injuries), nor is there any evidence of an abuse of discretion on the part of the trial judge in refusing a new trial. Hence a statement of this case must include the following facts which the finding of the jury established: The plaintiff testified that he was not acquainted with the condition of this bridge—and to this we will later refer; that when he started across it, it was so dark the hole could not have been seen without getting down on the floor of the bridge and looking for it; that he was walking at a fast gait; and that he did not know the hole was there—although on further examination he admitted that he had noticed it probably once or twice previous to the time he was injured. The last time he saw the hole, according to his testimony, was some two or three months prior to the date on which he was injured.

This substantially states the facts disclosed by the record.

We hold that the city was guilty of negligence in leaving this bridge in the condition described; that the city had already exercised its governmental jurisdiction over this street and therefore owed the ministerial duty to see that it was kept in reasonable repair for travel is shown by the fact that it graded the street, put in a concrete culvert, spread chats on the walkway, put in a culvert across the alley intersection on the sidewalk line, lighted the street, and constructed the bridge on which plaintiff was injured across the ditch in the street, the same being put there for travel in and out of the alley. But defendant contends that it did not construct that bridge for pedestrians to travel

over and was therefore not bound to keep it in repair for such use.    To this we can not lend our assent.    Ordinarily, when a city puts a bridge or culvert in a street, it is an invitation for the traveling public to use it and a representation that it is reasonably safe for travel for those who use it with ordinary care for their own safety.    *Ordinary travel* on a street is a term broad enough to take in a pedestrian who wishes to use the street or any part thereof as such.    He might bar himself by using one part of a thoroughfare when another part is a safer way, but that enters the field of measuring his act by the standard of due care.    The city had put in this bridge for travel.    Pedestrians had used it in their travels for a long period of time, making this a stronger case than that of Twedell v. City of St. Joseph, 167 Mo. App. 547, 152 S. W. 432, which we think declares the law and follows the rule announced in Benton v. City of St. Louis, 217 Mo. 687, 118 S. W. 418.    Our case does not fall within the rule announced in Ely v. City of St. Louis, 181 Mo. 723, 81 S. W. 168, because there the city had not attempted to improve the street at the place of the injury.    Besides, in determining what is declared as the law in Ely v. City of St. Louis, an eye must be kept on the overruled case of Ruppenthal v. City of St. Louis, 190 Mo. 213, 88 S. W. 612, as well as what is said in Benton v. City of St. Louis, 217 Mo. 687, 118 S. W. 418.    Without going into a discussion as to what the law has been or what it ought to be, we content ourselves by holding that the facts stated establish the negligence of the defendant, and as authority therefor, cite Benton v. City of St. Louis, Twedell v. City of St. Louis, both supra, and Curran v. City of St. Joseph, 264 Mo. 656, 175 S. W. 584.

Was the plaintiff at the time he was injured exercising ordinary care for his own protection?

What the law is concerning contributory negligence in the use of a defective street or way which will

as a matter of law preclude a recovery may be thus summarily stated: First, there can be no recovery if the way is so glaringly dangerous that no reasonably prudent person conscious of the danger would have gone over it. Second, if one knows of a defective place and goes blindly into it relying on chance or on a presumption that the city must keep the way reasonably safe, he is barred. Third, though not knowing of it, if he by the exercise of ordinary care for his own safety could have discovered the danger in time to have saved himself and the court can see from the evidence that any person exercising reasonable care for his own safety would have made the discovery, his act is inexcusable. The foregoing propositions are supported by the following cases: Craine v. Street Railway, Wilson, and Kansas City, 246 Mo. 393, 152 S. W. 24; Diamond v. Kansas City, 120 Mo. App. 185, 96 S. W. 492; Ryan v. Kansas City, 232 Mo. 471, 134 S. W. 566, 985; Sindlinger v. Kansas City, 126 Mo. 315, 28 S. W. 857; Wheat v. City of St. Louis, 179 Mo. 572, 78 S. W. 790; Kaiser v. City of St. Louis, 185 Mo. 366, 84 S. W. 19; Coffey v. City of Carthage, 186 Mo. 573, 85 S. W. 532.

In view of the fact that plaintiff testified that at the time he was injured it was so dark that he could not have seen the hole without getting down and looking for it, he would fall without the rule requiring him to be reasonably careful to discover the defect and avoid it. "Reasonable care" does not require a pedestrian to become a street inspector and guard every step with his eyes riveted upon the sidewalk. [Ryan v. Kansas City, 232 Mo. 1. c. 483, 134 S. W. 566, 985.]

Therefore, if plaintiff is to be denied a recovery in this case it must be on the ground that he knew of the existence of the hole; in other words, he must be held as a matter of law to have been, as an ordinarily prudent person from some past relation or experience with the hole, conscious of its existence there at that time and place, and this, from the evidence, is of course

to be determined from a consideration of what his relation or experience with the hole or bridge had been. To be charged with knowledge from a past experience there must be a conscious passive reproduction with recognition of a former relation.

Where a man passes over a sidewalk continually and sees or could see a defect existing therein to such a degree that all would agree that an ordinary person must know that it was there, the law will not let him gainsay it but will hold him to that knowledge attributable to the average man. That one must use his God-given senses as an ordinary person does use them rings throughout the decisions; and, it might well be added, he must use his God-given faculties of mind as ordinary men exercise them. But no ordinary pedestrian is to be held to an extraordinary exercise of either.

What is the evidence in this case bearing on the question of plaintiff's knowledge of the defect? He testified: ''I was not acquainted with the conditions of this bridge.'' Yet that might not excuse him if the evidence as to his experience and relation thereto could lead to no other conclusion than that he was acquainted with it. But he also testified that he had only passed over this bridge a few times; that he had noticed this hole once, maybe twice, but that the last time he recalled seing it was some three months before the injury; and that he had gone down that street the afternoon of the day the injury occurred but not over this bridge and that he did not see the hole. No court could as a matter of law charge him with knowledge that the hole was there from this experience and relation thereto when he started over the bridge on this occasion. [See, Chase v. Railway Co., 134 Mo. App. 655, 114 S. W. 1141; Bradley v. City of Spickardsville, 90 Mo. App. 416; Deland v. City of Cameron, 112 Mo. App. 704, 87 S. W. 597; Smith v. City of Butler, 48 Mo. App. 663.]

Knowing the hole was there in this case is the necessary element to charge plaintiff with contributory negligence; and whether he had such knowledge by reason of his former experience is a question of fact to be determined by the triers thereof. The fact that he had passed over the bridge several times before he was injured and the fact that he had noticed a hole there some three months prior to his injury is some evidence from which a jury might find that he had such knowledge. The jury must say to him, not the court, From your experience and knowledge some three months before, you, as a reasonably intelligent and ordinarily endowed individual knew the hole was there when you walked into it because a reasonable exercise of your faculty of memory would tell you it was there.

The cases cited by appellant wherein recovery was barred on account of contributory negligence are those where the plaintiff admitted that he knew of the danger at the time, or those where a previous knowledge of the condition was such that the facts related could only lead to the one conclusion that an ordinarily prudent person could not keep from knowing the situation. [See, Diamond v. Kansas City, 120 Mo. App. 185, 96 S. W. 492; Border v. City of Sedalia, 161 Mo. App. 633, 144 S. W. 161; Craine v. Street Railway Co., Wilson, and Kansas City, 246 Mo. 393, 152 S. W. 24; Ryan v. Kansas City, 232 Mo. 471, 134 S. W. 566, 985; Sindlinger v. Kansas City, 126 Mo. 315, 28 S. W. 857.]

We are cited to the case of Holding v. City of St. Joseph, 92 Mo. App. 143. We do not deem our opinion in conflict therewith, but if it is we are following later cases decided by the Supreme Court and are in perfect harmony with later decisions of the court that rendered that decision.

Both the sidewalk culvert over the alley and the ditch bridge were used by pedestrians in going along Morgan street. From the evidence, the condition of

the sidewalk culvert with its center swayed down and no protecting railings thereon made it a more or less dangerous way.  The instructions did leave it to the jury to say whether a reasonably careful man would have deviated his line of travel from the walkway and turned out east over the well-beaten pathway across the ditch bridge, and this was as much as the defendant was entitled to under the evidence.

Appellant's assignment that there was incompetent evidence admitted is without merit.

The instructions fairly presented the case according to our view of the law leaving it to the jury to say whether the plaintiff was guilty of contributory negligence.

Finding no reversible error in the record, the judgment should be affirmed.  *Sturgis, J.,* concurs in these views.