ILGES, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, November 17, 1903.

1. **Carrier of Passengers**: PASSENGER THROWN FROM CAR: DEMURRER TO PLAINTIFF'S EVIDENCE. Where plaintiff testified that by a sudden lurch of defendants' car, she was thrown from the body of the car into the street, a demurrer to plaintiff's evidence was properly overruled.

2. ———: ———: NEGLIGENCE: INSTRUCTIONS: DEGREE OF CARE. An instruction that a street car corporation is bound to use the highest degree of care for the safety of its passengers, in connection with an instruction which tells the jury that if the motorman's negligence caused the car to lurch, etc., plaintiff could recover, is not erroneous, though the term "highest degree of care" is not defined.

3. **Instructions:** USE OF WORD "THINK." Using the word "think" in an instruction instead of "find" or "believe" is not error.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Crawley, Jamison & Collett* for appellant.

(1) The term "highest degree of care" ought not to have been used at all, or else its meaning should have been expressly confined to that degree of care which a very prudent person would employ under like circumstances. Dougherty v. Railroad, 97 Mo. 647; Smith v. Railroad, 108 Mo. 243; Jackson v. Railroad, 118 Mo. 225; Freeman v. Railroad, 95 Mo. App. 94; (2) A commission to "think" damages is truly boundless. Camp v. Railroad, 94 Mo. App. 284; Railroad v. May, 33 Ill. App. 366.

*Ernest E. Wood* for respondent.

(1) A common carrier of persons is liable for injuries sustained by passengers on account of lurches of its cars caused by negligence of its agents in charge. Only slight negligence need be proven. Huelsenkamp v. Railroad, 37 Mo. 537; Hite v. Railroad, 130 Mo. 132; Sullivan v. Railroad, 133 Mo. 1; Parker v. Railroad, 69 Mo. App. 54; O'Connell v. Railroad, 106 Mo. 482; Morrisey v. Wiggins Ferry Co., 43 Mo. 380; Clark v. Railroad, 127 Mo. 197; Sweeney v. Railroad, 150 Mo. 385. (2) Respondent's instruction number one was properly given. Powers v. Railroad, 60 Mo. App. 481; Lemon v. Chanslor, 68 Mo. 340; Railroad v. Twinane, 10 West Rep. 824; Kelly v. Railroad, 70 Mo. 609; Leslie v. Railroad, 88 Mo. 55; Burbridge v. Railroad, 36 Mo. 677; Gilson v. Railroad, 76 Mo. 282; Sawyer v. Railroad, 37 Mo. 260; Taylor v. Railroad, 47 N. H. 304; Meier v. Railroad, 64 Pa. St. 225; Railroad v. Darby,

14 How. (U. S.) 468. The instructions should be read together. Smith v. Railroad, 108 Mo. 243. (3) There was no error in respondent's instruction number three. Buck v. Railroad, 46 Mo. App. 555; Rose v. McCook, 70 Mo. App. 183.

BLAND, P. J.—On the fifteenth day of August, 1902, the plaintiff was a passenger on one of defendant's street cars running south on Grand Avenue in the city of St. Louis. She was either thrown from the car into the street by the sudden jerk or lurch of the car forward, or stepped off the car while it was in motion and fell into the street. The fall, however occasioned, injured her. For these injuries she recovered a judgment for $2,833 in the circuit court. From this judgment the defendant duly appealed.

The petition counts upon six distinct acts of negligence on the part of defendant but the court confined the attention of the jury to but one, comprehended in the following instruction given for the plaintiff, to-wit:

"If the jury believe from the evidence that the motorman in charge of defendant's car was negligent, and that his negligence caused the car to lurch, and that said lurch threw plaintiff into the street, causing injuries to her, then they should find in favor of the plaintiff and against the defendant, unless they find from the evidence that the plaintiff was not at the time exercising ordinary care for her own safety."

All the other allegations of negligence were taken from the jury by instructions given for the defendant.

The answer was a general denial and an allegation that plaintiff's injuries were occasioned by her own negligence in stepping off of a moving car.

The evidence is that the car on which plaintiff was a passenger was a four-wheel summer car, the trucks being in the center, and that the car rocked when running on an uneven track. Plaintiff got on the car at Florrisant avenue to go south to where Olive street

crosses Grand avenue.    When she boarded the car there
were only a few passengers on it but before reaching
her point of destination the car, which was open on both
sides and at each end, with running-boards on either side
became very crowded with passengers.    The seats were
all full and the end platform, and some passengers were
standing in between the seats inside the car and the
running-boards were crowded with as many as could
hang on.    When the car reached Washington avenue—
one block north of Olive street—it slowed up and two
or three young men stepped from the running-boards
into the street.    At this juncture plaintiff testified that
she arose from her seat near the west side of the car to
press the button to signal the motorman to stop the car
at the Olive street crossing that she might alight; that
when she arose she found the car so crowded that she
could not reach the button in the stanchion at the end of
the seat where she had been seated, and so she reached
around and over some one to touch the button in the
stanchion in front of her, and while she was in the act
the car gave a sudden lurch and threw her into the street
severely injuring her.    She is corroborated by the evi-
dence of other witnesses.

On the part of the defendant, the evidence of several
disinterested witnesses, who were passengers on the
same car, is that plaintiff arose from her seat, pressed
her way around some passengers and stepped on the
running-board while the car was in running at a speed
of from five to seven miles an hour, and fell into the
street; that the car did not start suddenly forward after
slowing up, that it did not lurch but was running as such
cars ordinarily move.

1.    The contention of the defendant that there is
a failure of proof is not borne out by the evidence.
Plaintiff's evidence that she was thrown from the body
of the car into the street, if believed by the jury, must
have established in their minds beyond peradventure
that there was an unusual and very severe lurching or

jerking of the car to cause the plaintiff's misfortune, and we think the court correctly overruled the demurrer to the evidence offered at the close of plaintiff's evidence and again at the close of all the evidence.

2.   The first instruction given for plaintiff is as follows:

"The court instructs the jury that a common carrier of persons, such as a street car corporation, is bound to use the highest degree of care for the safety of its passengers."

Defendant contends, not that the instruction erronesly declares the law in the abstract, but that the term "the highest degree of care" should have been defined or the instruction modified, and cites Dougherty v. The Missouri R. R. Co., 97 Mo. 647; Smith v. The C. & A. Ry. Co., 108 Mo. 243; Jackson v. The Grand Ave. R'y Co., 118 Mo. 199, and Freeman v. Ry., 95 Mo. App. 94, in support of its contention.

Dougherty v. Mo. R. R. Co., supra, was a suit for a passenger for damages caused by a sudden, violent start of the defendant's horse car.    Instruction No. 3, given for the plaintiff, told the jury that under the circumstances of the case it was the duty of the manager or driver of the car to exercise the "utmost human foresight, knowledge, skill and care."    The instruction was approved, but on a rehearing the majority of the Supreme Court were of the opinion that the instruction stated the abstract proposition too broadly as to the degree of care incumbent on the defendant.

In Smith v. The C. & A. R'y Co., supra, it is said an instruction that "the law imposes on a common carrier of passengers the utmost care in carrying them safely" is not erroneous, where an instruction is also given that "the carrier is not an insurer of the safety of passengers, and that negligence on the part of its servants must be shown."    In Jackson v. Railroad, 118 Mo. l. c. 225, the Dougherty and Smith cases are approvingly cited.

In Freeman v. Metropolitan Street R'y Co., 95 Mo.

App. 94, an instruction which declared the defendant (a passenger carrier)"guilty of negligence unless he exercised utmost human skill, diligence and foresight to prevent the accident," to the passenger, was held erroneous.

Leslie v. The W., St. L. & L. P. R'y Co., 88 Mo. 50, was a suit by a passenger for damages occasioned by the negligence of the carrier. In respect to the duty of the carrier to the passenger the court instructed the jury that the defendant was bound to use the highest degree of care. The court held that as a general statement of the liability of the carrier, the instruction was not objectionable, and that the fact that the instruction proceeded to state hypothetically the facts upon which the plaintiff might recover, sufficiently qualified the general proposition.

The instruction under consideration is not qualified in any manner, nor is there any other instruction given in the case which hypothetically sets out facts upon which the plaintiff might recover. The second instruction (above quoted) in general terms tells the jury that if the motorman was negligent and his negligence caused the car to lurch, etc., plaintiff could recover. The two instructions, when considered together, in effect, told the jury that it was the duty of the motorman to exercise the highest degree of care and if he failed to exercise such high degree of care and the car lurched and plaintiff was thrown into the street, she could recover.

In Furnish v. Railroad, 102 Mo. 438, an instruction defining the skill, diligence and foresight required of a passenger car driver was defined as "such skill, diligence and foresight as is exercised by a very cautious person under like circumstances."

In Feary v. Railroad, 162 Mo. 75, an instruction telling the jury "if defendant's servants and employees exercised all the care and foresight that was reasonably practicable, then there is no negligence," was approved. The court through MARSHALL, J., said: "The instruction under consideration requires all the care and fore-

sight that was reasonably practicable. The law requires nothing that is unreasonable.''

The highest degree of care signifies nothing short of the exercise of the utmost human skill and care. There can be no degree of care higher than the highest. ''Carriers of passengers,'' says Story (Story on Bailments, 2 Ed., sec. 600, ''bind themselves to carry safely those whom they take into their coaches as far as human care and foresight will go; that is, with the utmost care and diligence of very cautious persons.''

In Gilson v. Railway Co., 76 Mo. 282, the court said: ''The care required is that care, prudence and caution which a very competent and prudent person would use and exercise in a like business and under like circumstances.''

In Shearman & Redfield on Negligence (4 Ed.), sec. 405, it is said: ''The obligation of a common carrier is said to be the utmost care and skill which prudent men are accustomed to use under similar circumstances.''

In Dodge v. Steamship Co., 2 L. R. A. (Mass.) 83, the words, ''utmost care and skill,'' were held not to mean the utmost care and diligence which men are capable of exercising, but to mean the utmost care consistent with the carrier's undertaking and with due regard for all the other matters which ought to be considered in conducting the business.

In Libby v. Railroad Co., 20 L. R. A. (Me.) 812, it is said: ''A common carrier of passengers, although not an insurer, must do all that human care, vigilance, and foresight can, under the circumstances, considering the character and mode of conveyance, to prevent accident to passengers.''

While, as an abstract proposition, common carriers of passengers are bound to use the utmost care and skill to prevent injuries to their passengers, yet the rule should be applied in a practical manner. That it may be so applied, the text-books and many of the cases have set up some standard (usually the standard of care, skill

and foresight, which a very competent and prudent person would be expected to use and exercise under like or similar circumstances) by which the jury may measure the degree of care required. And it seems to us that some such standard should somewhere be incorporated in the instructions to the jury in this class of cases so that they may not be left to set up a standard of their own and to run it up as high as their imaginations will allow them. But if it is not done, the omission has never, so far as we are informed, been held to be reversible error. This very question has, at the present term of this court, in the case of Fillingham v. St. Louis Transit Company, been so fully and exhaustively treated in an opinion by GOODE, J., that nothing remains to be said. 102 Mo. App. 573.

3. The court gave the following instruction: "If the jury find in favor of the plaintiff, they should assess her such damages as they think under the evidence would compensate her for the pain and suffering she has endured by reason of her injuries, and such further sum as they think would fairly compensate plaintiff for the injuries sustained," to which defendant objected and counsel insists here that it gave the jury a boundless commission to assess damages. The word "think" has various meanings. Its meaning must be ascertained from the connection in which it is used in a sentence. Some of its meanings, according to Webster, are "to form an opinion by reasoning; to judge; to conclude; to believe." The jury by the instruction were required to think of the damages under the evidence, not outside of it, and to think out (judge) the damages from the evidence. We see no substantial objection to the wording of the instructions and we *think* that it was as well understood by the jury as if the word "believe" or "find" had been used instead of the word "think."

Other assignments of error are discussed in the briefs, but they are found to be without merit and the judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.