RICHARD H. CRAINE, Appellant, v. METROPOLITAN STREET RAILWAY, DAVID WILSON and KANSAS CITY.

**Division Two, December 10, 1912.**

1. **NEGLIGENCE: Peremptory Instruction: Presumption.** The action of the trial court in giving, at the close of plaintiff's case, a peremptory instruction to find for defendant, must be reviewed under the well-recognized rule that the testimony in plaintiff's favor is presumed to be true and that he is entitled to every inference that may reasonably and fairly be drawn therefrom.

2. ————: **Pleading: Different Acts.** In negligence cases plaintiff may allege as many grounds of negligence causing the injury as he may desire, provided they are not inconsistent with each other; and the several acts of negligence are not inconsistent unless there is such repugnancy between them that proof of one necessarily negatives the other.

3. ————: **Basis.** The basis of an action of negligence is the duty owed by the person sought to be charged to the person injured.

4. ———: **Pleading: Inconsistencies: Closing Bridge: Erecting Guards.** An allegation of a breach of duty to close a bridge to public travel the moment a part of the floor thereof was removed is inconsistent with a charge of a breach of duty to erect guards along the opening.

5. ———: **Repairing Bridge: Paramount Right.** The right of a city to repair a bridge in a public street is paramount to the right of the public to its use; and the city seeks to avail itself of this right by erecting a large sign at each end of the bridge, warning the public that it is unsafe and closed to public travel.

6. ———: ———: **Street: Reasonably Safe: Attendant Circumstances.** A city owes a duty to the public to keep its bridges and highways in a reasonably safe condition for travel; yet when liability is sought to be enforced against it for injuries received by a traveler across a bridge which is being repaired and which is dangerous, the question is the duty which the city owed him under the attending facts and circumstances under which the injury was received.

7. ———: **Liability of City: Bridge: Purpose of Barriers: Knowledge of Danger.** The purpose of giving notice of the dangerous condition of a bridge in a public street and of erecting barriers at its entrance is to acquaint travelers of the danger; but if the traveler is possessed of knowledge of the danger independently of such notice or barrier, the absence of the notice, or his failure to see it if given, does not affect his legal rights, and failure to give the notice or to erect the barrier is of no legal importance.

8. ———: ———: **Assumption of Risk by Traveler.** Where no element of danger in the conditions existing at the time the plaintiff attempted to drive his horse across the bridge was unknown to him, and he voluntarily, in broad daylight, drove upon the bridge from which the flooring on one side had been removed, and his horse, becoming frightened from clouds of smoke from a railroad engine passing underneath; turned, backed the buggy and fell through the opening, he cannot recover from the city for his injuries. Having full knowledge of the danger to be encountered, he assumed the risk.

9. ———: **Traveler: Ordinary Care.** It is not the exercise of ordinary care for a traveler in a buggy to voluntarily drive across a long bridge twenty or twenty-five feet above the ground, with two wheels within four feet of an opening therein five feet wide and extending the full length of the bridge, knowing that trains and engines frequently pass underneath and emit clouds of smoke, when another convenient and entirely safe way can be taken. The risk is hazardous and voluntarily assumed.

10. ———: ———: ———: Choosing Dangerous Way. Where two ways are open to a street traveler, one safe and the other unsafe, and known by him to be, to choose the unsafe way is such a lack of ordinary care as to defeat recovery.

Appeal from Jackson Circuit Court.—*Hon. Herman Brumback,* Judge.

AFFIRMED.

*Rush L. Fisette* and *Bird & Pope* for appellant.

(1) The court erred in giving defendants' instructions in the nature of demurrers to plaintiff's evidence at the close of plaintiff's evidence. (2) The court erred in overruling plaintiff's motion to set aside the involuntary nonsuit taken by plaintiff after the giving of said instructions of defendants in the nature of demurrers to plaintiff's evidence. Ordinary care means such care as an ordinarily prudent person would exercise under the same or similar circumstances. Mitchell v. Railroad, 132 Mo. App. 294; Perrette v. Kansas City, 162 Mo. 251; Bradley v. Railroad, 138 Mo. 310; Diamond v. Kansas City, 120 Mo. App. 185; Dunphy v. Stock Yards Co., 118 Mo. App. 507; Schroeder v. Transit Co., 111 Mo. App. 67; Kube v. Transit Co., 103 Mo. App. 593; Stanley v. Railroad, 114 Mo. 606; Loewer v. Sedalia, 77 Mo. 446. The fact that Craine knew of the danger would not necessarily preclude him from recovery. The use of a street, sidewalk, bridge or crossing known to be defective or obstructed, which is not so obviously dangerous that no prudent person would attempt to use it, is not negligence as a matter of law which will bar a recovery for an injury caused by the defect or obstruction. Phelan v. Paving Co., 227 Mo. 666; Waltmeyer v. Kansas City, 71 Mo. App. 354; Maus v. Springfield, 101 Mo. 613; Gerdes v. Foundry Co., 124 Mo. 347; Cohn v. Kansas City, 108 Mo. 393; Barr v. Kansas City, 105

Mo. 550; Smith v. St. Joseph, 45 Mo. 449; Rusher v. Aurora, 71 Mo. App. 418; Beauvais v. St. Louis, 169 Mo. 500; Deland v. Cameron, 112 Mo. App. 704; Loewer v. Sedalia, 77 Mo. 431; Brands v. Car Co., 213 Mo. 698; Mitchell v. Railroad, 132 Mo. App. 152; Womach v. St. Joseph, 168 Mo. 241; Pauck v. Provision Co., 159 Mo. 478; Kossman v. St. Louis, 153 Mo. 298; Chilton v. St. Joseph, 143 Mo. 202; Flynn v. Neosho, 114 Mo. 571; Boulton v. Columbia, 7 Mo. App. 523; Culverson v. Maryville, 67 Mo. App. 347; Pembroke v. Railroad, 32 Mo. App. 62; Railroad v. Prescott, 59 Fed. 654; Railroad v. Crist, 116 Ind. 446; 7 Am. & Eng. Ency. Law (2 Ed.), 392, 411; Huhn v. Railroad, 92 Mo. 447. And whether the danger was so obvious and imminent as to make it contributory negligence to cross the bridge in question is generally a jury question. Deschner v. Railroad, 200 Mo. 310; Mockovik v. Railroad, 196 Mo. 550; Allen v. Transit Co., 183 Mo. 411; Curtis v. McNair, 173 Mo. 271; Leslie v. Railroad, 88 Mo. 51; Adams v. Railroad, 100 Mo. 556; Millsap v. Beggs, 122 Mo. App. 11; Francis v. Railroad, 127 Mo. 658; O'Melia v. Railroad, 115 Mo. 219; Wyatt v. Railroad, 55 Mo. 485. The fact that a person had another route open to him will not debar his recovery, unless the taking of that route was the only prudent thing to do. Phelan v. Paving Co., 227 Mo. 666; Ashley v. Road Co., 99 Mo. App. 186; Conner v. Nevada, 188 Mo. 149; Curtis v. McNair, 173 Mo. 271; Kossman v. St. Louis, 153 Mo. 293; Schroeder v. Transit Co., 111 Mo. App. 67; Culverson v. Maryville, 67 Mo. App. 347; Loewer v. Sedalia, 77 Mo. 413; Graney v. St. Louis, 141 Mo. 180. Plaintiff's conduct was undoubtedly influenced by others going over the bridge, and by the fact that defendants furnished a flagman to direct plaintiff and others over the bridge. Curtis v. McNair, 173 Mo. 271; Flynn v. Railroad, 78 Mo. 195; Brunke v. Tel. Co., 115 Mo. App. 36; Francis v. Railroad, 127 Mo. 675; Railroad v. Prescott, 59 Fed.

654; Reed v. Railroad, 94 Mo. App. 371; Bohn v. Railroad, 106 Mo. 429; 7 Am. & Eng. Ency. Law (2 Ed.), 378. The defendants were clearly negligent in leaving the open space next to the driveway on the bridge. Foster v. Swope, 41 Mo. App. 145; Powers v. Insurance Co., 91 Mo. App. 55; Loewer v. Sedalia, 77 Mo. 431; Graney v. St. Louis, 141 Mo. 180; Wiggin v. St. Louis, 135 Mo. 558. Where defendants' negligence has influenced plaintiff's conduct, they are estopped from making the defense that the plaintiff was negligent. Millsap v. Beggs, 122 Mo. App. 11. Where defendants' negligence concurs with an accident, defendants are liable. 7 Am. & Eng. Ency. Law (2 Ed.), 398. Sufficiency of barricade as a warning is a question of fact for the jury. Feldkamp v. Kansas City, 75 Pac. 464; 29 Cyc. 475. It must be presumed that each of the defendants thought the bridge was reasonably safe, or else they would have closed it for traffic. How can they now say that it was so obviously dangerous that no prudent man should have ventured over it? And especially in view of the fact that they provided a flagman to direct the traveling public across the bridge?

*A. F. Evans, Hunt C. Moore, John H. Lucas,* and *Cowherd, Ingraham, Durham & Morse* for respondents.

(1) Under the evidence the defendants were not guilty of any negligence toward the plaintiff. Phelan v. Paving Co., 227 Mo. 704; District of Columbia v. Moulton, 182 U. S. 576; Haller v. St. Louis, 176 Mo. 613; Cohn v. City of Kansas, 108 Mo. 393. (2) Under the evidence plaintiff was guilty of such contributory negligence as to bar a recovery. Cohn v. Kansas City, 108 Mo. 393; Woodson v. Railroad, 224 Mo. 701; Wheat v. St. Louis, 179 Mo. 581; Kaiser v. St. Louis, 185 Mo. 373; Diamond v. Kansas City, 120 Mo. App. 185.

KENNISH, J.—This is an appeal from the circuit court of Jackson county, in an action brought by Richard H. Craine against the Metropolitan Street Railway Company, David Wilson and Kansas City. The petition is in two counts, in the first of which plaintiff seeks to recover damages in the sum of $15,000 for personal injuries received by him while driving across a bridge in said city, and in the second to recover the sum of $175 for the loss of his horse and damage done to his buggy at the time he received his said injuries. At the close of plaintiff's evidence the court instructed the jury to return a verdict in favor of each of the defendants, whereupon plaintiff took a nonsuit, with leave to move to set the same aside. Plaintiff filed a motion to set aside the nonsuit, which was overruled, and he appealed to this court.

The two counts of the petition are the same except that the first is based on plaintiff's personal injuries, while the second is based on the loss of his horse and damage to his buggy. Each count of the petition, so far as the allegations therein are material to a decision of the questions before us, alleges in substance the following facts:

That the defendant Metropolitan Street Railway Company runs and operates a line of its street railway upon and over Southwest boulevard, a public street and thoroughfare of defendant Kansas City, within the corporate limits of said city; that on November 29, 1907, and prior thereto, there was a bridge on and along said Southwest boulevard where the said boulevard crosses the tracks of the Kansas City Belt Line Railway Company, and that on said date said bridge was in a defective, unsafe and dangerous condition, in this, that said defendants had torn out planks and timbers between the street car tracks running over said bridge, and between the tracks and the trusses on one side of said bridge, leaving large openings there-

in, and had "carelessly and negligently failed to guard the same in any manner to prevent teams and persons from being precipitated down therein, and had carelessly and negligently made said openings without providing material or timbers and planks to put in place of the old timbers and planks torn from said bridge by them as aforesaid;" that defendants knew, or by the exercise of ordinary care could have known, of the dangerous and unsafe condition of said bridge, a sufficient length of time before said November 29 to have repaired the same; that defendants failed and neglected to repair said bridge, and "wrongfully and negligently maintained and permitted said bridge to be and remain in said dangerous and unsafe condition, and carelessly and negligently failed and neglected to close the same to public travel;" that on said November 29, at about 11:30 o'clock a. m., while plaintiff was driving a horse and buggy across said bridge, and while an engine was passing beneath said bridge and throwing out immense volumes of smoke and steam, thereby frightening said horse, the passing of engines beneath said bridge and the throwing out of smoke and steam being a common occurrence, as the defendants well knew or by the exercise of ordinary care and caution would have known, plaintiff and his horse and buggy, by reason of the defective, dangerous and unsafe condition of said bridge, were precipitated and thrown down through said opening in said bridge, with great force and violence, whereby, etc.

The answer of defendant Metropolitan Street Railway Company was a general denial. Defendants David Wilson and Kansas City each filed an answer containing a general denial and a defense of contributory negligence.

The evidence introduced by the plaintiff tended to show the following facts:

The bridge in question was built fifteen or twenty years before the date of plaintiff's injury. The defendant street railway company maintained double tracks across it, and the public used it as a thoroughfare for vehicles and pedestrians. As it was constructed and used it was merely a continuation of Southwest boulevard across and twenty or twenty-five feet above the tracks of the Kansas City Belt Line Railway Company. There was a space of twenty-seven feet between the trusses on the east side and those on the west side which was used by street cars and vehicles, and outside of the trusses were walks used by pedestrians. Between the inside rails of the two street car tracks there was a space of six feet. On either side of the double tracks was a narrow driveway for vehicles, the distance between the outside rails and the trusses being six feet. At the time of the accident, and for two months prior thereto, defendant David Wilson, under a contract with the defendant city, was engaged in repairing the bridge. The city and the street railway company had an agreement to divide the cost of the repairs between them. In making the repairs the plank flooring between the inside rails of the two tracks had been torn out, leaving an unguarded opening about five feet wide and extending the entire length of the bridge. The flooring between the outside rail and the trusses on the west side had also been torn out, leaving an opening six feet wide, which also extended the full length of the bridge. When these openings were made in the floor there was placed at each end of the bridge a sign three feet wide and six feet long on which was printed in large letters a warning to the public that the bridge was unsafe and was closed to traffic. Notwithstanding these signs and the opening in the floor, the public continued to use the bridge to a considerable extent as a public thoroughfare for vehicles. During a part of the time the floor was in this condition an

employee of the street railway company was stationed
on the bridge and "flagged" cars and vehicles across.
With the floor between the tracks and in the driveway
on the west side torn out, vehicles could cross the
bridge only on the east side, and as there was not
room for a car and a vehicle or for two vehicles to
pass on that side, this flagman would signal cars and
vehicles to wait at one end of the bridge until a car or
vehicle coming from the other direction had crossed,
and would then signal the waiting car or vehicle to
proceed.

Plaintiff, a building contractor, sixty-three years
of age, lived in Rosedale, a small town near Kansas
City, and on the morning of the accident started to
drive from his home into the city in a one-horse buggy.
He had driven across the bridge frequently while the
floor was in the same condition as it was that morn-
ing.  When he had made these former trips he was
sometimes flagged across, and at other times when the
flagman was not in sight he would cross without wait-
ing for a signal.  He had observed the openings in
the floor and was fully aware of the exact condition
of the bridge.  When he reached the bridge that morn-
ing he did not see the flagman and started to drive
across without waiting for a signal.  The six foot
driveway on the east side of the bridge was so narrow
that it was difficult to drive between the outside rail
of the street car track and the trusses of the bridge
and for that reason he drove with the left wheels of
the buggy about a foot inside of the east rail, which
brought the left wheels within four feet of the open-
ing in the center of the bridge.  When he was about
half way across, an engine passing along the railway
tracks beneath emitted a large cloud of smoke which
came up through the opening just to the left and in
front of the horse.  The horse became frightened,
either at the smoke or the noise of the engine, and

attempted to wheel around. There was not room for the horse and buggy to turn, and in attempting to turn the horse backed the buggy into the opening between the tracks, and plaintiff, the horse and the buggy all fell through the opening to the tracks below, seriously injuring plaintiff, killing the horse and damaging the buggy.

The horse was perfectly gentle and plaintiff had several times driven it across the bridge while the openings in the floor were in the same condition as at the time of the accident. Before the work of repairing the bridge was commenced, trains and engines had frequently passed under the bridge while plaintiff was driving the same horse across it and the horse had not been frightened by the noise or the smoke. Plaintiff knew that the Belt Line Railway which ran beneath the bridge was used extensively for switching trains into and around Kansas City. When he started to drive across the bridge at the time of the accident he did not apprehend any danger in so doing. He could have reached his destination without crossing the bridge by driving east to Summit street and thence north to the intersection of Summit street and Southwest boulevard. By taking the latter route he could have driven over paved streets, with only a slight difference in the distance traveled, but he would have encountered several steep grades that could be avoided by crossing the bridge.

The action of the trial court in giving a peremptory instruction at the close of plaintiff's case must be reviewed under the well-recognized rule that the testimony in plaintiff's favor is presumed to be true and that he is entitled to every inference which may reasonably and fairly be drawn from it. Applying this rule we have carefully read and considered the record and the authorities applicable thereto and have reached the conclusion that the judgment was right and should be affirmed.

The petition counts upon three grounds of negligence, namely, (1) failure to erect a guard along the opening in the bridge, (2) negligently making the opening in the bridge without providing timbers and planks to put in the place of the timbers and planks removed and (3) failure to close the bridge to public travel. It is a settled rule of pleading in negligence cases that a plaintiff may allege as many grounds of negligence causing the injury as he may desire, provided they are not inconsistent with each other. And the courts have gone far in holding that the several acts of negligence relied upon are not inconsistent unless there is such a repugnancy between them that proof of one necessarily negatives the other. It is also the law that the basis of an action for negligence is the duty owed by the person sought to be charged to the person injured. Looking at the petition under these principles, it is apparent that the alleged breach of duty for failure to close the bridge to public travel "the moment said opening or openings were made" is inconsistent with a breach of duty in failing to erect guards along such opening. The failure of the defendant to observe the duty of erecting guards necessarily negatives the existence of a duty to close the bridge, and conversely. These observations are not made because of any defect of pleading, for no such question is presented, but rather in seeking to determine the real negligence relied upon and against which relief is asked.

It appears from the undisputed testimony that at the time of the injury the city was engaged in repairing the bridge and, as held by this court in the case of Phelan v. Paving Co., 227 Mo. 666, the right of the city to repair the bridge was paramount to the right of the public to its use. Of this paramount right the city undoubtedly sought to avail itself, for it erected a large sign at each end of the bridge, warn-

ing the public that the bridge was unsafe and closed to public travel. And if at the time of the injury the duty rested upon the city to keep the bridge in a reasonably safe condition for travel, then by the erection of the signs its liability would stand confessed. Whether the city had discharged its duty to the public in thus warning it against the use of the bridge, so that as a matter of law it would be exempt from liability generally for injuries to persons attempting to cross while it was in that condition, we need not stop to inquire; for while the city owes a duty to the public to keep its bridges and highways in a reasonably safe condition for travel, yet when liability is sought to be enforced, the question is as to the duty owed to the plaintiff under the attending facts and circumstances when the injury was received. Applying that rule in this case, the failure to give notice of the dangerous condition of the bridge or to erect barriers is of no legal importance. The sole purpose of such notice and barriers is to acquaint the traveler with the danger, and if he is possessed of knowledge of the danger independently of such notice, then the absence of notice, or his failure to see it if given, would not affect his rights. [Dist. of Columbia v. Moulton, 182 U. S. 1. c. 581; Cohn v. Kansas City, 108 Mo. 387; 29 Cyc. 474.]

In Dist. of Columbia v. Moulton, supra, discussing this question, the court said:

"As respects the notice owing to the plaintiff of the presence of the roller, we agree with the opinion of the Supreme Judicial Court of Maine in Lane v. Lewiston, supra, that where a steam roller is allowed to remain upon a municipal highway it is requisite that the municipality causing the obstruction should give reasonable notice to the traveling public of its presence, but that a view of its obstruction itself in time to avoid it without injury amounts to notice. In

other words, as stated by the Maine court, 'No one needs notice of what he already knows,' and, 'knowledge of the danger is equivalent to prior notice.' [91 Maine, 296.] That the plaintiff had notice of the presence of the roller on Park street in ample time to have avoided it, is undisputed. When he turned from Fourteenth street into Park street it was broad daylight, there was nothing to obstruct his view westward, and in fact he testified that the roller was in plain sight. He was not induced or directed by the agents of the district to proceed past the roller. He knew that such objects sometimes frightened horses, but from his acquaintance with the disposition of his horse he believed that he could control the animal and drive safely past the roller, and he voluntarily undertook to do so. Now, it seems clear—particularly as the danger was neither hidden nor concealed —that the district was under no obligation to restrain the plaintiff from attempting to pass, either by closing Park street or by other means."

As disclosed by the testimony, the danger in crossing the bridge was in the opening in the center, five feet in width, extending the full length thereof, and the possibility of noise or smoke and steam from an engine passing under the bridge. The danger from the opening was not only obvious and in plain view, but plaintiff had previously crossed the bridge, driving the same horse, after the opening had been made and when it was in the same condition as on the date of the accident. He had even driven across when smoke and steam had been emitted from an engine below, so that no element of danger in the conditions existing at the time of the injury was unknown to him. Possessing full knowledge of the danger to be encountered, plaintiff, in broad daylight, voluntarily drove upon the bridge and must be held to have assumed the risk incurred in such a hazardous undertak-

ing. [Phelan v. Paving Co., 227 Mo. 666; Dist. of Columbia v. Moulton, supra; Haller v. St. Louis, 176 Mo. 606; Wiggin v. St. Louis, 135 Mo. l. c. 565; Cohn v. Kansas City, 108 Mo. 387; Ray v. Poplar Bluff, 70 Mo. App. 252; Fitzgerald v. Connecticut River Paper Co., 155 Mass. 155.]

We characterize plaintiff's conduct in driving across the bridge as hazardous advisedly, for, as a matter of law, we do not hesitate to say that it was not the exercise of ordinary care to drive across a long bridge, with two wheels of the vehicle within four feet of an opening five feet wide, twenty or twenty-five feet above the ground, knowing that engines and trains might be passing underneath, when another convenient and entirely safe way could have been taken. Can it be said that it was negligence of the defendants to expose plaintiff to a danger of which he was as well advised as they were, and yet hold that plaintiff was in the exercise of ordinary care in *voluntarily* incurring such danger? We think not, and in so ruling we do not mean to be understood as holding that knowledge of a defect in machinery or of danger in a highway precludes a right of action to the person possessing such knowledge in all cases, for there may exist such considerations of duty or exigency as to present a question whether the risk was voluntarily assumed, notwithstanding knowledge of the danger. But the facts of this case do not raise such a question, for there was another entirely safe way open to plaintiff, over paved streets and but a few yards further, to reach his destination. By taking that course plaintiff could have avoided all danger of accident in crossing the bridge in its unsafe condition. Where, under such facts, two ways are open, one safe and the other unsafe, and the danger in the latter is known to the traveler, to choose the unsafe way is such a want of ordinary care as will

defeat a recovery. [Cohn v. Kansas City, 108 Mo. 387; Ray v. Poplar Bluff, 70 Mo. App. 252; 28 Cyc. 1428.] In Cohn v. Kansas City, supra (l. c. 393), BLACK, J., speaking for this court, said:

"One who attempts to cross over a sidewalk as part of a road, known to him to be dangerous, when the dangerous place could have been easily avoided, as by passing around it, or taking another side of the road, is wanting in due care, and the court may so say as a matter of law. [Erie v. Magill, 101 Pa. St. 616; Gosport v. Evans, 112 Ind. 133; Centralia v. Krouse, 64 Ill. 19.]

"In this case no want of care can be attached to the city from the mere fact of the existence of the excavation, for the city had the right to permit it to be made; and the work was progressing with proper haste. The only possible act of negligence on the part of the city is the failure to have railings along the end of the excavation at the middle of the street. Such a railing was not necessary to give the plaintiff warning of the existence of the excavation, for she saw it, and, therefore, had full notice of its existence.

"But, aside from all this, the plaintiff's own evidence shows that the accident occurred in broad daylight. The plaintiff found the west sidewalk barricaded, saw this excavation and the men at work in it. She passed along the south side of it to the middle of the street, and, instead of passing on to the east sidewalk which she knew was unobstructed and perfectly safe, she attempted to pass along the narrow space between the excavation and the street railroad track. Two ways were open to her: One from the middle of the street across to the east sidewalk, which was perfectly safe; the other along the excavation and railroad track in the middle of the street which was obviously unsafe and dangerous. She knowingly chose the latter, and in so doing she took upon herself the

hazards attending the experiment.    On well-settled principles of law, she has no just cause of action against the city, and this is manifest from her own evidence.''

In briefs of counsel much space is given to the discussion of the recent well-considered case of Phelan v. Paving Co., 227 Mo. 666, a case closely analogous in its facts to the case in hand.  We have carefully reviewed that case and cannot regard it other than as authority against appellant's contention.  It was there shown that the north half of the street was open to travel, but it was not in a safe condition by reason of the fact that the south half was then being reconstructed, a steam roller being operated thereon for that purpose, and material and appliances therefor were placed on the north half.  The court held that the obstructions on the north half and the operation of the engine were open and known dangers of which plaintiff should be held to have voluntarily assumed the risk and from which no liability for injuries would arise.  It was only the negligent operation of the engine, which the evidence tended to show frightened the horse and which was held the proximate cause of the injury, that entitled plaintiff to have his case submitted to the jury.  If the negligent operation of the engine was the proximate cause of the injury in the Phelan case, the smoke or noise of the engine was likewise the proximate cause in this case.  Indeed, if we assume that the engine emitting the smoke and steam was operated and controlled by the defendants, instead of by the railway company, there is little to distinguish the two cases, so far as the legal questions presented are concerned, except that there was no evidence of negligence in the operation of the engine in the case at bar.

The testimony leaves no doubt that the plaintiff sustained serious injuries and loss by reason of the

accident, but after viewing the testimony from every angle, we think his case clearly falls within the doctrine of *damnum absque injuria,* and that the judgment should be affirmed.

It is so ordered. *Brown, P. J.,* and *Ferriss, J.,* concur.