Harry BROOKS, Respondent,

v.

Cloid F. STEWART, Appellant.

No. 47710.

Supreme Court of Missouri,
Division No. 1.
May 9, 1960.

Powell & Jones, Dexter, for appellant.

Briney & Welborn, Bloomfield, McHaney & McHaney, Kennett, for respondent.

DALTON, Judge.

This is an action for $25,000 damages for the wrongful death of plaintiff's wife. Verdict and judgment were for defendant, but the court set the judgment aside and granted plaintiff a new trial for error in giving defendant's Instruction No. D–5. Defendant has appealed.

Late in the afternoon of January 18, 1956, while snow was falling, plaintiff accompanied by his wife was driving his 1955 Plymouth automobile in a southerly direction on the west side of Highway No. 25 and, at a point approximately eight-tenths of a mile north of the intersection of Highway No. 25 and Route AA in Stoddard County, plaintiff's automobile collided head on with a state highway grader operated by the defendant. Plaintiff's wife sustained serious injuries which caused her death on January 29, 1956. Defendant was operating the grader in a northerly direction on the west or left side of the highway blading snow off of the pavement.

Although the petition contained several allegations of negligence, the only finding of negligence which plaintiff submitted to the jury was that defendant "was negligent in operating the said highway grader on the left or west side of said highway without having warnings of its approach in front of said grader * * * at a time when said left or west side of the highway was not free of oncoming traffic." All other assignments were abandoned. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W. 2d 91, 93(1).

Appellant contends that the court erred in granting plaintiff a new trial (1) because Instruction D–5 was not erroneous; and (2) because the court should have sustained defendant's motion for a directed verdict as requested by defendant at the close of all the evidence. Appellant says: (a) There was no evidence that defendant was negligent; (b) the plaintiff was guilty of contributory negligence as a matter of law in failing to stop or swerve; and (c) the defendant was performing a governmental function in grading snow off of the highway in order to make the highway safe for public travel and, therefore, was not guilty of negligence.

█ █ If plaintiff failed to make a submissible case for the jury, he was not prejudiced by the giving of Instruction D–5. Bunch v. Mueller, 365 Mo. 494, 284 S.W.2d 440, 442; Howard v. Johnoff Restaurant Co., Mo.Sup., 312 S.W.2d 55, 56; Seeley v. Hutchison, Mo.Sup., 315 S.W.2d 821, 824 (1). If defendant's motion for a directed verdict presented at the close of all the evidence should have been sustained, the trial court erred and abused its discretion in granting plaintiff a new trial. Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824, 826; Graves v. Atchison, T. & S. F. Ry. Co., 360 Mo. 167, 227 S.W.2d 660, 661(1–3); Schmidt v. Allen, Mo.Sup., 303 S.W. 2d 652, 655. From a careful consideration of the record we have reached the conclu-

sion that the question of plaintiff's contributory negligence is the decisive issue in the case.

Plaintiff was 66 years of age and was engaged in selling hail insurance. He had attended a meeting in Cape Girardeau and was returning to his farm home when the collision occurred. He had been over the same road "a lot of times", including the morning before the collision. While plaintiff had been blind in his right eye since he was 16 years of age, his left eye was "good". He could see off at a distance "practically" as well without glasses, although he wore glasses for reading purposes.

Plaintiff left Cape Girardeau about 2 p. m., shortly after it had started to snow, and by the time he reached Highway No. 25, "it was snowing pretty bad" and it "commenced to snow harder." Plaintiff drove south on Highway No. 25 at around 30 m. p. h. The weather was rough. "It was snowing and sleeting and freezing" and so slick he was afraid to drive fast. Snow covered both sides of the road. He figured it was about two inches deep. There were ruts in the ice and snow. After plaintiff had driven 40 to 45 miles from Cape Girardeau and had reached "a little curve coming down the hill", he saw the grader with which he subsequently collided. There was still some curve down to where the grader was located. He judged the grader was moving, coming north towards him, but when he first saw it he could not tell whether it was on the right or left side of the road. When he first saw the grader from the top of the hill, it was something like 300 yards away. He was "probably 75 yards" away when he determined it was on his side of the road. It was on "the grader man's left-hand side" of the road, on the west side, plaintiff's right-hand side.

Plaintiff testified: "There was some ruts and I was in them, and I couldn't never get the back end of the car out, I got the front end out a little piece, but not very far, till I cut it back, I seen I couldn't make it. I cut it back and I couldn't get the car on the left side out of the ruts * * *." "I was trying to get over on the other side, and my car slipped and went sideways, and I thought it was going to turn over, so I whipped back and was going to take the ditch, and I couldn't ever get it out of them ruts no more." When plaintiff put his brakes on, it seemed like he picked up more speed going down hill. He "couldn't say hardly at all" about his speed at the time of the collision, but it was "something like 20 m. p. h."

Plaintiff fixed the time of the collision as "about 4:00 o'clock, a little bit after. * * * It was getting kind of dark." Plaintiff had his car lights "on dim" and the grader's lights were on. About a mile or so before the collision occurred, plaintiff had met and passed another state highway grader going north on the east (plaintiff's left) side of the road. It was blading snow off of the east side of the highway and leaving that side of the highway "fairly clean." Plaintiff, however, continued to drive in the snow on his right-hand side of the highway. When plaintiff first saw the second grader, he was approximately 300 yards from it, it was just getting to a small curve, but plaintiff could not say exactly where the grader was in this curve when the collision occurred. He said he did not see the grader go around this curve. Plaintiff was "practically over" the second curve north of Bloomfield when the collision occurred, but he had not reached the second curve after he came over the hill. When he came over the hill he was in the act of going on a curve to his right. The grader was then not too much to his left, but it was down where you straighten out to go to Bloomfield and where there is not too much of a curve. He could not say how far the grader had moved from the time he first saw it until the collision occurred. It was coming toward him all of the time. It didn't look to him like it ever stopped. While it seemed to him like it was moving when the collision took place, he couldn't say positively. When he saw

the grader he "tried to get over one way or the other." Later he said he didn't start to turn to the right or left until he was about 50 or 75 yards from the grader. He said he had "practically" gone 200 or 250 yards before he tried to turn to the right or left, after he saw the grader, but at that time he didn't know which side of the road it was on. About the time he saw the grader, he slackened speed by lifting his foot off the accelerator and putting his foot on the brake. He did that after he passed the hill and straightened out. Before he saw the grader, he had gotten clear around the curve on the hill and was starting down the grade where "it is not too awful steep." He also said he saw the grader before he got off of the curve on the hill; that he took his foot off the gas and put his foot on the brake immediately and that was before he straightened out. He did not try to turn to the left or right until "about 50 or 75 yards before" he got to the grader.

Plaintiff further testified:

"Q. Well, when you saw you had just passed one grader on the right side of the road, didn't you think this one would be on the left side of the road? A. That's what I thought, but I couldn't tell.

"Q. You thought when you first saw it it was on the left side of the road, didn't you? A. Yes.

"Q. But you didn't try to go to the right or left until you went 200 or 250 yards more, did you? A. Well, I judge it was 75 yards.

"Q. That's when you put it over there? A. When I tried to turn off from the grader.

"Q. In other words, when you saw this grader about 300 yards away and you thought it was on your side of the road, you still didn't try to turn to the right or to the left until you went 225 or 250 yards? A. I wouldn't say that.

"Q. That's what you did, wasn't it? Now, just a minute, as I understand you, you saw it when you were about 300 yards away? A. That's right.

"Q. And you thought the grader was on your side then, but you didn't know it? A. I couldn't tell.

"Q. But you thought it was on your side, you say? A. Yes.

"Q. And still you didn't try to turn to the right or to the left until you got 75 or 50 yards from it, did you? A. Well, it was at least 75 yards."

When plaintiff first saw the grader, he did not see the big red flags sticking out on both sides of the grader that said "Danger." He did not see them until he was leaving the grader after the collision, but he judged they were there before the collision. He did not see any big red flag sticking up above the cab on the grader.

Plaintiff further testified that, as he approached the hill in question, there were no warning signs along the highway in front of the grader, nor did he see any signs before he reached the top of the hill and saw the grader in the valley below. There were no signs on the highway to notify him that the grader was coming on the wrong side of the road and there were no vehicles in front of the grader on the same side of the road to warn of the grader's approach.

Plaintiff's witness, Jack Pritchard, a highway patrolman, arrived at the scene of the accident at 4:50 p. m. Plaintiff was not there at the time and he interviewed plaintiff at the Davis Clinic at Bloomfield. However, the witness said that he arrived at the scene 5 minutes after the accident occurred. This witness testified that, as plaintiff had approached the hill from the north, he was on a curve, but the collision occurred down in the valley. When plaintiff's car was 100 yards north from the top of this hill he could not see a car down in the valley, but from the top of this hill

it is down hill and around a curve to the place of the collision. "It is a grade to the south." Beyond the place of the collision, to the south, there is another curve that curves back south and really runs in a southwesterly direction. The grader was just about out of the first curve north of Bloomfield and the AA intersection. The witness found that the highway grader was blocking the left side of the highway going north, that is, it was in the west lane of the highway headed north, while plaintiff's car was headed south in the same lane and the car "was up against the grader, the front of the two vehicles were together." The highway was paved with concrete 20 feet in width and, back of plaintiff's car, the highway was covered with snow and was slick, since that part of the highway had not been bladed off. He did not recall any deep ruts. It was snowing at the time and there was some snow on the east side of the highway, but one could see where the other grader had gone north. It was 200 yards from the top of the hill where one could see down to the place of the collision, 200 yards of "gradual grade."

Plaintiff's evidence contains no description of the state highway grader, but defendant offered a photograph in evidence and defendant's evidence contains a detailed description. The top or cab part of the grader was 14 to 15 feet above the ground and had a headlight on either side near the top of the cab. The grader was made of steel and iron. A red flag extended two feet above the corner of the cab and red-flag danger signs 18 inches or 2 feet in diameter extended straight out on each side of the grader. The signs were red, but the lettering of the word "Danger" on the front and back of each sign was white. The signs were about the height of a man's head above the ground.

Defendant was 33 years of age and had been employed by the State Highway Department for five years operating a motor grader. He was operating the grader involved in the mentioned collision. Defendant and Ed Dunnivan had been operating two graders together on January 18, 1956, and were moving from Dexter to Advance, blading snow from the highway. The snow was about two inches deep. Dunnivan was approximately 1000 feet or more ahead of defendant and was blading snow off his right-hand or east side of the highway. Defendant was operating on the west side blading snow off that side of the highway. His purpose was "to try to make it safe for people to travel on." It was still snowing and he had passed "lots of cars" that afternoon as he was going north. He saw plaintiff's car come over the hill "approximately a quarter of a mile away." At that time the grader was 100 feet or more back south of the point of collision. Visibility was one mile, that is, defendant could see a mile on the level. Plaintiff was on his own right-hand side of the highway, and plaintiff's car began to slide 40 to 50 feet back of the place of collision and came down "a gradual incline" into the grader. When plaintiff's car got close, the defendant killed the motor on the grader and stuck his head and body out of the right-hand side of the cab and motioned plaintiff around on the east or opposite side of the road. The front of the car hit the front of the grader, center to center. The grader was occupying practically the entire left-hand side (west side) of the highway. At the time of the collision the other grader was out of sight over the hill to the north. After plaintiff and his wife were removed from the car, defendant remained at the scene and directed traffic until the patrolman arrived.

Defendant said the collision occurred at 4:15 p. m. It was "snowing heavily", "pretty hard." There were no warning signs out in front of the grader. There was no one directing traffic or any warning vehicle ahead and "no warning signs on the side of the road up at the top of the hill warning traffic that the grader was on that side of the road." Defend-

ant knew of the hill and he could not see beyond it. He knew that back beyond the top of the hill, the driver of a southbound car "had no visibility down into that valley."

While a plaintiff is ordinarily bound by his own personal testimony, it has often been held that he is not conclusively bound by his own testimony or that of his own witnesses as to mere estimates of time, speed and distance. Fisher v. Gunn, Mo. Sup., 270 S.W.2d 869, 874. On the basis of this rule, respondent insists that plaintiff is not bound by his testimony that he saw the grader 300 yards away, but that he may rely on the more favorable testimony of the patrolman (plaintiff's witness) that it was 200 yards from the top of the hill to the point of collision. We have seen that plaintiff testified that when he first saw the grader it was 300 yards away and that he had "practically" gone 200 to 250 yards before he tried to turn either to the right or left, while plaintiff's witness Pritchard testified that, when plaintiff's car was 100 yards north of the top of the hill one could not see a car down in the valley; but that from a point on the hill and highway where plaintiff "could see clear on around the second curve," it was approximately 200 yards to where witness found plaintiff's car and the grader. They were located "back around on the north end of the first curve north of the AA intersection." While it is not at all clear from the record that plaintiff and his witness were estimating the distance from the same point on the hill to the same point below, since the grader was not at the point of collision when plaintiff came over the hill and saw it in the valley below, nevertheless we think the difference unimportant to the issues here and we shall assume that respondent is entitled to rely on the patrolman's estimate of distance.

Respondent further insists that he is entitled to rely on 4:45 p. m. as the time of the collision rather than his own testimony that it was "about 4 o'clock, a little bit after." Defendant fixed the time as 4:15 p. m., and the patrolman said he arrived at the scene at 4:50 p. m., "five minutes" after the accident; but after plaintiff had been removed from the scene. Respondent insists it was near the shortest day in the year and the conflict is very important because of the degree of darkness and the ability of plaintiff to see. We cannot agree. The patrolman was not present when the collision occurred and his testimony is worthless on the issue mentioned. He first saw plaintiff at the Davis Clinic. In any event the plaintiff admits that he saw the grader in the valley below when he came over the hill. Plaintiff only had his lights "on dim" and, while not necessarily material here, we take judicial notice that the sun did not set on January 18, 1956, until 5:05 p. m. central standard time. The degree of darkness and the extent of snowfall were, however, material on the issue of negligence and contributory negligence.

Respondent further insists that, under the evidence most favorable to plaintiff, *plaintiff could not tell which side of the highway the grader was occupying until he was 75 yards away from it.* With this we agree, but while plaintiff repeatedly said that he did not, in fact, determine the grader was occupying his side of the highway until he was 75 yards from it, he never at any time contradicted his testimony that from the first time he saw it he *thought* it was on his side of the highway. He knew it was coming toward him, and he took no effective action until he *knew* it was on his side of the road and then it was too late to be able to stop short of a collision.

█ Whether one is guilty of contributory negligence depends upon the particular facts and circumstances surrounding the occurrence that caused the injury complained of. Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295, 299(5); Wilson v. Shumate, Mo.Sup., 296 S.W.2d 72, 76(6). If from a considera-

tion of all the evidence in the case favorable to plaintiff, it appears so convincingly that no reasonable and disinterested minds can rightfully disagree that plaintiff failed to exercise the highest degree of care in the operation of his automobile, as the law requires for the preservation of his own safety and that of others, and that such failure directly contributed to his wife's death, plaintiff was guilty of contributory negligence as a matter of law and defendant's motion for a directed verdict should have been sustained. Russell v. Johnson, 349 Mo. 267, 160 S.W.2d 701, 704; Adkins v. Boss, Mo.Sup., 290 S.W.2d 139, 140(1); Cento v. Security Building Co., Mo.Sup., 99 S.W.2d 1, 5(7).

█ Plaintiff was operating the automobile in which his wife was riding. The date, time and place of collision are not in dispute. We accept the circumstances surrounding the occurrence as shown by a favorable view of plaintiff's evidence and personal testimony. When we say that a plaintiff is entitled to a favorable view of the whole evidence, we do not mean that material facts testified to by plaintiff may be ignored. A plaintiff is bound by his own testimony.

A heavy snow was falling. It was sleeting and freezing and the west side of the highway was covered with about two inches of ice and snow and there were deep ruts in the snow and ice. Plaintiff was driving about 30 m. p. h. It was a little after 4 p. m. It was getting dark and visibility was bad. Plaintiff had his car lights "on dim." His 1955 Plymouth automobile was about five months old and it was in good condition, and so were its brakes and tires. Plaintiff was familiar with the highway, having been over it many times, including the morning of that day. Only a mile or so further north plaintiff had passed a highway grader blading snow off the east side of the highway and leaving that side of the pavement "fairly clean." As plaintiff reached the top of the hill on the curve to the right, he saw the second grader down in the valley below, a little to his left. He did not see it until he reached the top of the hill and turned the curve to the right. It was coming north, toward him. Respondent here concedes that the evidence shows the grader was in the valley below and was at the north end of the second curve; and that, when plaintiff first saw the grader, *he could not tell whether the grader was on the left or right side of the road.* Plaintiff knew of the condition of the highway, of the ice, snow, deep ruts and the steepness of the grade around the curves some 200 yards or more to the point where he subsequently met this grader head on. When plaintiff saw this second grader coming toward him, he *thought* it was on his side of the road. He lifted his foot from the accelerator and put it on the brake and began to slacken speed, but not until he got over the hill and after he passed the hill and straightened out. He also said he had "gotten clear around that curve on top of the hill and was starting down" before he saw the grader and that he saw the grader before he got out of the curve on the hill. Plaintiff's testimony very clearly shows that he did not try to stop or turn either to the left or right until he definitely saw and positively knew that the grader was approaching on the *west* side of the highway; and that he was then about 50 or 75 yards away, "well, I judge it was 75 yards." Defendant's evidence does not aid the plaintiff's case on this issue, since defendant said plaintiff's car did not begin to slide until it was 40 to 50 feet back of the place of collision.

We think it wholly immaterial to any issues presented here that plaintiff was not able to positively determine that the grader was on his side of the road until he was within 75 yards of it, because the record shows that plaintiff had reason to think and did *think* that the grader was on his side of the road when he first saw it more than 200 yards away. We find no dispute in the record on this issue. Although,

plaintiff was not positive the grader was on his side of the road when he first saw it, the highest degree of care in the operation of an automobile under the admitted facts and circumstances to which he testified, including plaintiff's best judgment and mental conclusion as to the location of the grader, required immediate action.

The word "thought", as plaintiff used it in his testimony, is the past tense and past participle of the verb "think", and the meaning of the word "think", as defined by Webster's New International Dictionary, Second Edition, Unabridged, 1939, is: "To form, or formulate in the mind; * * * to have a judgment or opinion of; * * * believe." See Bohn v. City of Maplewood, Mo.App., 124 S.W.2d 649, 652; Ilges v. St. Louis Transit Co., 102 Mo.App. 529, 77 S.W. 93, 95; Collier v. Commonwealth, 303 Ky. 670, 198 S.W.2d 974, 975 (2, 3); Roark v. Commonwealth, 221 Ky. 253, 298 S.W. 683, 685(4); 86 C.J.S., p. 779. While respondent points out that there were no warnings of any kind in front of the grader and no warning signs along the highway, such warnings were unnecessary and would not have given any information he did not already have, because plaintiff saw the grader more than 600 feet away, knew that it was coming toward him and *thought* it was on his side of the road. See Wren v. Suburban Motor Transfer Co., Mo.App., 241 S.W. 464, 469(6); Lumb v. Forney, Mo.App., 190 S.W. 988, 989(1); Fann v. Farmer, Mo. App., 289 S.W.2d 144, 149(10, 11); Craine v. Metropolitan St. Ry. Co., 246 Mo. 393, 152 S.W. 24, 27(4, 5); Gregorc v. Londoff Cocktail Lounge, Inc., Mo.Sup., 314 S. W.2d 704, 707(8); Haller v. City of St. Louis, 176 Mo. 606, 75 S.W. 613, 615.

There is no evidence tending to show that plaintiff thought or believed the grader would return to its right or east side of the highway after he first saw it and after he had reached the mental conclusion that it was on his own west side of the highway, and there is no evidence to support an inference that the grader might turn back to its right-hand side of the highway. There is no contention here that plaintiff could not have stopped or swerved his car within the 600 feet and have avoided the collision by the exercise of the highest degree of care. Even though the grader was on its wrong side of the highway, still it was plaintiff's duty to exercise the highest degree of care in the operation of his automobile to avert a collision between the two vehicles.

The rule is stated in Nelms v. Bright, Mo.Sup., 299 S.W.2d 483, 489, as follows: "It has been said that in the exercise of the highest degree of care a motorist need not slow down or stop merely because he sees another car approaching on his side of the road. 60 C.J.S., Motor Vehicles, § 317. However, when he has knowledge or by the exercise of the highest degree of care should have knowledge, that the driver of the car advancing toward him on the wrong side of the road is unable or is not intending to move to the right or to a position of safety, and when he knows or should know that if the approaching driver does not change his position a collision will likely occur, then he must take all reasonable precautions to avoid a collision. McGuire v. Steel Transportation Co., Inc., 359 Mo. 1179, 225 S.W.2d 699; Lemonds v. Holmes, 241 Mo.App. 463, 236 S.W. 56; Shaw v. Wilcox, Mo.App., 224 S.W. 58; 60 C.J.S., Motor Vehicles, § 317. The general rule that a motorist traveling to the right of the centerline of the highway, has a right to assume that the driver of an approaching car will exercise due care and operate his automobile so as to yield that part of the highway which is to the right of the centerline does not necessarily exonerate the motorist if a collision results because these rules of the road do not confer absolute rights, but they impose reciprocal duties which may be qualified by the circumstances. McGuire v. Steel Transportation Co., Inc., supra."

■■ At 30 m. p. h., plaintiff was traveling 44 feet per second and in ¾ of a second, the normal reaction time, would have traveled 33 feet. He then had 567 or more feet remaining, within which to swerve or stop and avoid a collision. There was no testimony as to stopping distances for plaintiff's car under the circumstances shown at 30 m. p. h., but we think that was unnecessary in order to determine the issue of plaintiff's contributory negligence, because we believe no contention can reasonably be made that, when plaintiff came over the top of the hill at 30 m. p. h. and saw the grader in the valley below, had he acted promptly, he could not have safely regulated the speed and operation of his automobile so as to have avoided a collision. While he slackened speed, he did not immediately attempt to stop or swerve or have his automobile under control. Courts are bound to take judicial notice of matters of common knowledge and may judicially notice familiar facts attending the use of automobiles. While the courts may not judicially know the precise distance within which an automobile traveling 30 m. p. h. may be stopped under the circumstances stated by plaintiff, we know it may be stopped in less than 567 feet. Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, 12; Nelms v. Bright, supra, 299 S.W.2d 483, 490(17, 18).

■■ It is our conclusion that plaintiff's own testimony is insufficient as a matter of law to sustain a finding that he exercised the highest degree of care under the admitted circumstances in the operation of the automobile in which he and his wife were riding. Although, "plaintiff could not tell which side of the highway the grader was occupying, until he was 75 yards away from it" and, although, thereafter, in the exercise of the highest degree of care, plaintiff could not stop or turn aside and avoid the collision, yet, from the first moment he saw the grader he knew all of the surrounding facts and circumstances as to snow, ice, grade and visibility and knew that he could not tell which side of the road the grader was on. He knew it was approaching and he *thought* it was on his own side of the highway. In such circumstances he could not proceed heedlessly into known danger until it was too late to stop or turn aside. The cases relied upon by respondent, such as Moore v. Middlewest Freightways, Inc., Mo.Sup., 266 S.W.2d 578; Lemonds v. Holmes, 241 Mo.App. 463, 236 S.W.2d 56 and other cases, are clearly distinguishable upon their facts. The only reasonable conclusion from plaintiff's own testimony is that plaintiff was negligent and his own negligence was a direct and proximate cause of the mentioned collision. Adkins v. Boss, supra, 290 S.W.2d 139, 143 (6).

The order granting a new trial is reversed and the cause remanded with directions to the trial court to reinstate the verdict of the jury and to enter judgment thereon for defendant.

All concur.